**Michael PHELAN, et al., Appellants,**

**v.**

**James Clyde LOPEZ, Appellee.**

**No. 09 84 319 CV.**

Court of Appeals of Texas, Beaumont.

Dec. 5, 1985.

Rehearing Denied Jan. 2, 1986.

Michael McGown, Thomas Moses, Goodhue Building, Beaumont, for appellants.

Paul J. Holmes, Beaumont, for appellee.

## OPINION

BURGESS, Justice.

James Clyde Lopez brought suit as a result of injuries he suffered in two separate accidents. The cause of both accidents and the resulting injuries were hotly contested. The first accident occurred on October 12, 1978. Mr. Lopez was working at a construction site in Beaumont, Texas, where a grocery store was being built. The property and the building being built were owned by Michael and Pat Phelan. Mr. Lopez alleged that while working on a raised mobile platform, a Mite-E-Lift, a wheel of the Mite-E-Lift fell into a utility hole in the building foundation. The Mite-E-Lift toppled, throwing Mr. Lopez to the ground. He claimed he suffered a knee injury and a back injury. He brought suit against the Phelans and their architect, Thomas C. McKnight, alleging various acts of negligence as to each.

The second accident occurred in Port Arthur, Texas on February 26, 1980. Mr. Lopez was working at the Port Arthur Civic Center which was under construction. Once again Mr. Lopez was on top of a Mite-E-Lift when a pen sheared and the platform suddenly fell. He claimed he suffered neck and back injuries as a result of

this accident. He brought suit against the owner, distributor and manufacturer of the Mite-E-Lift alleging negligence and product liability.

Trial began and during the trial, Mr. Lopez settled with all the defendants sued as a result of the second accident. The jury found Mr. Lopez, the Phelans and Mr. McKnight negligent regarding the first accident. They failed to find that McKnight's negligence was a proximate cause of the injuries. Based upon the jury's answers the trial court entered judgment in favor of Mr. Lopez against the Phelans. The Phelans bring forth eleven points of error.

The Phelans' first point of error states:
"The trial court erred in overruling Phelans' objections to the court's charge because there was no evidence that on the occasion in question, the Phelans were under a duty to supervise the work of an employee of a subcontractor."

The special issue in question was:

### SPECIAL ISSUE NO. 1

Find from a preponderance of the evidence which of the defendants, if any, was negligent with respect to the accident of October 12, 1978. Answer "yes" or "no" on each line in Column 1. If any of your answers are "yes" in Column 1, was any such negligence a proximate cause of the occurrence in question? Answer "yes" or "no" on the corresponding line of Column 2.

In answering this Issue you shall consider only the following acts or omissions, if any, which plaintiff alleges were negligence on the part of defendant McKnight and defendants, Mike Phelan and Pat Phelan:

(1) Failure to provide covers and/or barricades for the holes which were left in the floor of the building;

(2) Failure to properly supervise and coordinate construction activities on the premises;

(3) Failure to provide a reasonably safe place to work;

| | COLUMN 1<br>Negligence | COLUMN 2<br>Proximate Cause |
|---|---|---|
| **THOMAS MCKNIGHT** | | |
| (1) Covers and/or barricades | Yes | No |
| (2) Supervise and coordinate | No | |
| (3) Safe place to work | No | |
| **MIKE PHELAN AND PAT PHELAN** | | |
| (1) Covers and/or barricades | Yes | No |
| (2) Supervise and coordinate | Yes | Yes |
| (3) Safe place to work | Yes | No |

The Phelans' objections to the issue, which are relevant to this point of error, were:
"Defendants further object to special issue no. 1 because the evidence as a matter of law establishes that the responsibility to cover the holes and to supervise and coordinate the construction activities on the premises rested with Thomas McKnight who was an independent contractor.

Defendant further objects to the submission of special issue no. 1 as the evidence is undisputed that the defendants Phelan were the owners of the piece of property in question and under no duty to cover or barricade the holes in question, supervise or coordinate the construction activities or to supply a reasonably safe place to work. Further, there is no evidence that the failure to cover or barricade the holes in question was negli-

gence nor is there any evidence that it was a proximate cause of the accident in question. There is also no evidence that the failure to supervise and coordinate the construction activities on the premises was negligence nor is there any evidence that the negligence, if there were negligence, it was a proximate cause of the accident in question."

Both the objections to the charge and this point of error urge no evidence points. It was undisputed that the Phelans were the owners of the property and the building being constructed. It was hotly disputed as to what part the Phelans played in the construction process or whether the Phelans exercised any control over the premises while under construction.

■ An owner of land has a duty to use reasonable care to keep the premises under his control in a safe condition. *Smith v. Henger*, 148 Tex. 456, 226 S.W.2d 425 (1950). In *Redinger v. Living, Inc.*, 689 S.W.2d 415 (Tex.1985), our state adopted the RESTATEMENT (SECOND) OF TORTS sec. 414 (1977) which provides:

"One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care."

*See also, Tovar v. Amarillo Oil Co.*, 692 S.W.2d 469 (Tex.1985).

■ There was no issue given the jury as to the extent of the Phelans' control, if any, over the work place. There was no specific objection to the lack of such an issue. When some, but not all, of a cluster of issues are necessary to sustain a ground of recovery are given and answered by the jury without objection or request, the trial court may make written findings on omitted issues raised by the evidence. If no written findings are made, the omitted issues are deemed to have been found by the court in such a manner to support the judgment. *Harmes v. Arklatex Corp.*, 615 S.W.2d 177 (Tex.1981). Thus, the trial court is deemed to have found that the Phelans exercised some control over the property during the construction period. There is sufficient evidence to support this deemed finding. Point of error number one is overruled.

■ Points of error numbers two and three question the legal and factual sufficiency of the evidence of the jury's finding of proximate cause. In this regard, the Phelans argue that "conceptually the jury's answers to the liability issue do not make sense. ... if the Phelans' negligence in failing to provide covers and barricades for the holes and negligence in failing to provide a safe place to work were not proximate causes of the occurrence, then their failure to supervise and coordinate could not have been either." This court may not look to the answers of other issues for the purpose of determining whether an answer to a particular issue has support in the evidence. *C & R Transport, Inc. v. Campbell*, 406 S.W.2d 191 (Tex.1966). There was extensive testimony about the types of supervisors on a construction site and their respective duties and responsibilities. There was testimony that proper coordination and supervision could have avoided the "open hole" problem. It is reasonable to infer from all of this testimony that the Phelans' failure to supervise and coordinate the construction work was a proximate cause of the accident. Proximate cause, as any other ultimate fact, may be established and inferred from the circumstances surrounding the event. *Whitman v. Campbell*, 618 S.W.2d 935 (Tex.App.—Beaumont 1981, no writ). Points of error numbers two and three are overruled.

The next point of error states:

"The trial court erred in overruling Phelans' objections to the charge and denying their requested instruction regarding proximate cause because its submission of the definition of proximate cause contained language which was confusing to the jury."

The crux of this argument is that it was reversible error for the trial court to use

the term "new and independent cause" in its definition of proximate cause without defining it. The Phelans properly objected to the failure of the trial court to include a definition of "new and independent cause" and tendered a definition which was refused by the court. They allege the error was harmful in that it was a source of confusion and the jury was confused as to the definition of proximate cause.

It has been held several times that when the term "new and independent cause" is used, it must be defined. *Texas & N.O.R. Co. v. Warden,* 107 S.W.2d 451 (Tex.Civ.App.—El Paso 1937, writ dism'd); *Railway Express Inc. v. Gaston,* 91 S.W.2d 883 (Tex.Civ.App.—El Paso 1936, writ dism'd); *Texas & P. Ry. Co. v. Mercer,* 127 Tex. 220, 90 S.W.2d 557 (1936). However, in none of these cases, was the failure to define the phase held to be reversible error. In *Young v. Massey,* 128 Tex. 638, 101 S.W.2d 809 (1937) we find the following language:

"It is the settled law of this state that if the evidence in a negligence case raises the issue of new and independent cause, it is reversible error not to include the term in the definition of proximate cause. Also, if such term is necessary to be used in the definition of proximate cause, it is reversible error not to define it."

This was a case where the term was not included in the definition of "proximate cause." We find no cases such as the instant one, i.e., where the term is included in "proximate cause", but then not defined. We believe the most prudent rule to adopt in this situation is the one enunciated in *Dennis v. Hulse,* 362 S.W.2d 308 (Tex. 1962). In order to obtain a reversal of the trial court, the complaining party must show the error complained of amounted to such a denial of the rights of appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment. Further, this is to be determined from an evaluation of the whole case. *First Employees Ins. Co. v. Skinner,* 646 S.W.2d 170 (Tex.1983). The jury did not request the trial court to define "new and independent cause". They did not request the trial court to explain the relationship between proximate cause and new and independent cause. The jury only requested the judge to give them a clearer definition of proximate cause. Their request has been echoed by numerous juries and judges. While it was error not to define the term, in this instance, it was not reversible error. Point of error number four is overruled.

Point of error number five alleges the trial court erred in failing to sever the two different accidents. The Phelans recognize that severance is a matter within the sound discretion of the trial court. They say the trial court abused its discretion in that the controversy involved more than one cause of action, the severed cause would be the proper subject of an independently asserted lawsuit and the severed causes were not so intertwined as to involve the same identical factors and issues. In contesting the motions to sever, Mr. Lopez, relying on the common questions of fact respecting the cause of his low back injury, stated:

"The defendants involved in each accident are going to maintain that the other incident was the immediate, or producing cause, of the injury to plaintiff's low back. There is some evidence in the record to support either view, and in fact it is plaintiff's contention that the first accident did cause a low back injury, as diagnosed by Dr. Siff, and that the second accident aggravated this injury, both instances constituted sufficient trauma to be a producing cause of some portion of the disability which plaintiff is now experiencing as a result of the back injury.

"The only practical, fair, economical and just manner to adjudicate the issue of responsibility for the disability arising out of the back injury is to join these defendants in one suit where a jury can pass upon the preponderance of the evidence preceived by the jury. Any other approach would run the serious risk of either denying plaintiff recovery for the

back injury (if each separate jury were to conclude the other accident caused the disability) or would lay a predicate for defendants to contend on appeal from separate judgments that plaintiff was recovering twice from the same loss...."

■ The Phelans have not demonstrated where they were prejudiced in trying the two accidents together. In fact, the trial court instructed the jury not to include any amount for any injuries sustained resulting from the February 26, 1980, accident. The trial court did not abuse its discretion. Point of error number five is overruled.

■ Point of error number six alleges the trial court erred in not allowing a credit for the settlement reached with the defendants involved in the February 26, 1980, accident. This argument is based upon the premise that Mr. Lopez sued all the defendants as co-tortfeasors and when no issues were presented to the jury as to the fault of the second accident defendants, the Phelans' became entitled to a credit under *TEX.REV.CIV.STAT.ANN. art. 2212a, sec. 2(d)* (Vernon Supp.1985). The Phelans' analysis would be correct if the first accident defendants and the second accident defendants were joint tortfeasors.[1] Defendants become joint tortfeasors when their negligence concur in producing a single, indivisible injury. *Austin Road Co. v. Pope,* 147 Tex. 430, 216 S.W.2d 563 (1949). Here, Mr. Lopez suffered some separate and distinct injuries from the second accident. Moreover, as previously noted, the trial court expressly instructed the jury not to include any award based upon the injuries sustained in the second accident. Point of error number six is overruled.

Points of error numbers seven and eight state:

"The trial court erred in failing to have the jury deliberate further as to the apportionment of negligence between Lopez and the Phelans after McKnight was absolved from liability.

"The trial court erred in entering judgment against Phelans for seventy (70%) percent of the amount of damages awarded rather than disregarding the percentage assessed against McKnight."

These points are based upon special issue number 3, and the jury's answers as follows:

SPECIAL ISSUE NO. 3

What percentage of the negligence that caused the occurrence do you find from a preponderance of the evidence to be attributable to each of the parties found by you to have been negligent?

The percentage of negligence attributable to a party is not necessarily measured by the number of acts or omissions found.

Answer by stating the percentage opposite each name.

| | | |
|---|---|---|
| Phelan Defendants | 50 | % |
| Thomas C. McKnight, Jr. | 20 | % |
| James Clyde Lopez | 30 | % |
| TOTAL | 100 | % |

■ Point of error number seven focuses on the failure of the trial court to have the jury deliberate further. Here, there was no apparent conflict in the jury's answers,[2] thus there was no duty on the trial court to have them deliberate further. *See TEX.R.CIV.P. 295, Harris County v. Patrick,* 636 S.W.2d 211 (Tex.App.—Texarkana 1982, no writ).

The real thrust of the Phelans' argument is contained in point of error eight. *TEX. REV.CIV.STAT.ANN. art. 2212a, secs. 1, 2(b)* (Vernon Supp.1985) is the controlling statute. *Section 1* states:

"Contributory negligence shall not bar recovery in an action by any person or party or the legal representative of any person or party to recover damages for negligence resulting in death or injury to persons or property if such negligence is

---

1. The Phelans erroneously assume that for the trial court to have allowed the joinder, then all the defendants must be joint tortfeasors.

2. Much confusion could be overcome if the pattern jury charge would make it clear that juries compare only a party's negligence if that negligence was a proximate cause of the occurence.

not greater than the negligence of the person or party or persons or parties against whom recovery is sought, but any damages allowed shall be diminished in proportion to the amount of negligence attributed to the person or party recovering."

*Section 2(b)* states:

"In a case in which there is more than one defendant, and the claimant's negligence does not exceed the total negligence of all defendants, contribution to the damages awarded to the claimant shall be in proportion to the percentage of negligence attributable to each defendant."

■ *Section 1* is quite specific when it states that "damages allowed shall be diminished in proportion to the amount of negligence attributed to the party recovering." Here, the jury attributed 30 percent of the negligence to Mr. Lopez and the trial court diminished the jury's award by 30 percent. The Phelans rely on *section 2(b)* and the case of *Haney Electric Co. v. Hurst*, 624 S.W.2d 602 (Tex.Civ.App.—Dallas 1981, writ dism'd). Their reliance, however, is misplaced. *Section 2(b)* deals with contribution among defendants. Here, there was no other defendant with which to compare a percentage of negligence. *Haney, supra,* is distinguishable in that it involved multiple claimants and a single defendant. Thus, the trial court was correct in following *section 1*. Points of error numbers seven and eight are overruled.

■ The next two points of error challenge the legal and factual sufficiency of the evidence in the jury's award of $30,-000.00 in past medical expenses. Keeping in mind that the trial court had instructed the jury not to include any amount for injuries sustained resulting from the accident of February 26, 1980, the trial court's charge asked the jury to find "(g) Medical expenses in the past which were necessary for treatment of injuries resulting from the occurrence of October 12, 1978."

The medical expenses in question were incurred as a result of surgery to the lower back. A first surgery was performed in Beaumont, Texas in October, 1980, and a second surgery in Houston, Texas in February, 1982. The question of the cause of Mr. Lopez's lower back problem was highly contested. There was testimony from Mr. Lopez and his wife that he first began to have lower back problems after the first accident. There was expert testimony that Mr. Lopez was experiencing lower back problems two months prior to the second accident. There is conflicting expert testimony whether the second accident was the type that could have caused a lower back disc injury. The jury was confronted with days of testimony, much of it conflicting, and much of it based upon hypothetical questions. After reviewing the voluminous medical testimony and records, we are unable to say the jury's award is erroneous either legally or factually. Points of error numbers nine and ten are overruled.

■ The Phelans' final point of error contends the trial court erred in not allowing the jury to receive a compromise settlement agreement wherein Mr. Lopez settled one of his workers compensation claims. The Phelans offered the compromise settlement agreement for the purpose of showing Mr. Lopez has made a prior inconsistent statement. The offer was made by the Phelans, not to show any collateral source, but to show that Mr. Lopez had, in the workers compensation claim, alleged only a knee injury and had not mentioned a back injury. Mr. Lopez claimed the evidence was cumulative and its prejudicial force outweighed its probative value. In the manner offered by the Phelans, neither argument has merit. The evidence, in the manner proposed, should have been admitted. In light of the entire record, we are unable to say the error was reasonably calculated to cause and probably did cause the rendition of an improper judgment. This point of error is overruled.

Mr. Lopez brings forth two points of error which seek a remand on the issues regarding McKnight's negligence. Lopez seeks only to urge these points in the event

of a remand as to the Phelans. We, therefore, overrule these two points of error.

The judgment of trial court is affirmed.