**PILGRIM'S PRIDE CORPORATION and David Franklin Sharp, Jr., Appellants,**

v.

**David CERNAT and Joseph Ciupitu, Appellees.**

No. 06–05–00095–CV.

Court of Appeals of Texas, Texarkana.

Submitted June 12, 2006.

Decided Oct. 20, 2006.

———

Michael H. Bassett, Staci Quill Cassidy, The Bassett Firm, Dallas, for appellants.

John C. Ginn, William McDowell, Smith McDowell Ginn, Sulphur Springs, for appellees.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Chief Justice MORRISS.

On a midnight dark and dreary,

   Our two plaintiffs, worn and weary,

Slowly going, a "dark" truck towing on lonely stretch of road.

Suddenly, there came approaching

   Pilgrim truck, their rear encroaching,

Crashed into the truck that the two startled trav'lers towed.

In the wreckage sat the two,

All immersed in chicken "stew,"

With hurts sustained and backs that pained;

   Decided that they'd sue.

Judge and jury found for the pair,

   For hurts to backs (and "parts" in hair).

The Pilgrim, placed in some despair,

   Now asks of us, "Please, make it fair."

On this appeal, Pilgrim contends

   The trial court gave too much amends.

He says the proof is just too small

   To make a damages pile this tall;

For weakness of proof on some damages found

   We must cut a part out of that mound.

He, too, asks fault be re-compared—

   The fault that the Pilgrim and two plaintiffs shared.

"The way that the trial court figured, it erred."

David Cernat and Joseph Ciupitu (Appellees) were not likely considering light-hearted verse when they were rear-ended by a chicken truck driven by David Franklin Sharp, Jr., for Pilgrim's Pride Corporation. At the time of the accident, near midnight, Cernat and Ciupitu were driving on a rural section of interstate highway, towing a large pickup truck behind a much smaller truck, at about twenty miles per hour slower than the speed limit. Although they had no lighting connections between the vehicles, there was conflicting evidence about whether any lights on the towed truck were functioning. After the accident, Appellees were taken to a local hospital, where they were treated and released. They drove home to Hot Springs, Arkansas, the next day. Later, they sought medical attention for various back and neck complaints. Then, they sued Sharp and Pilgrim's Pride, seeking dam-

ages. The jury found that Sharp—and thus Pilgrim's Pride—was fifty percent responsible, Cernat was twenty-five percent responsible, and Ciupitu was twenty-five percent responsible.

The jury found damages as follows:

| | Cernat | Ciupitu |
|---|---|---|
| Past Physical Pain and Mental Anguish | $ 10,000.00 | $10,000.00 |
| Future Physical Pain and Mental Anguish | 0.00 | 0.00 |
| Past Lost Earning Capacity | 15,000.00 | 20,000.00 |
| Future Lost Earning Capacity | 10,000.00 | 0.00 |
| Past Physical Impairment | 15,000.00 | 15,000.00 |
| Future Physical Impairment | 0.00 | 0.00 |
| Past Medical Care | 53,000.00 | 12,388.00 |
| Future Medical Care | 17,000.00 | 17,612.00 |
| Total | $120,000.00 | $75,000.00 |

Appellees were not due the entire amount, because each bore partial responsibility for the accident. In an attempt to determine the amounts actually recoverable by each plaintiff, the trial court rendered judgment for each plaintiff in the amount of 66–2/3 percent of his respective gross damages set out above, thus awarding Cernat $80,000.00 and Ciupitu $50,000.00.

Pilgrim's Pride first contends the judgment is erroneous because it misapplies the various percentages of responsibility to the gross amount of the damages. It also contends, in parallel points of error, that the evidence was factually and legally insufficient to support the awards for loss of past and future loss of earning capacity to Cernat, and for future medical damages awarded to Cernat and Ciupitu. Because we hold the trial court erred in calculating damages under the comparative negligence statutes, we modify the judgment to correct that calculation; but, because we hold that legally and factually sufficient evidence supported the elements of damages

1. The lawsuit was filed after July 1, 2003. Although several of the statutes concerning contribution were amended effective July 1,

awarded, we affirm the judgment as modified.

*(1) The Trial Court Erred in Calculating Damages Under the Comparative Negligence Statutes*

The comparative negligence statutes in question provide, in relevant part:

§ 33.012. Amount of Recovery.

(a) If the claimant is not barred from recovery under Section 33.001, the court shall reduce the amount of damages to be recovered by the claimant with respect to a cause of action by a percentage equal to the claimant's percentage of responsibility.

. . . .

§ 33.013. Amount of Liability.

(a) Except [as to a jointly and severally liable defendant], a liable defendant is liable to a claimant only for the percentage of the damages found by the trier of fact equal to that defendant's percentage of responsibility with respect to the personal injury, property damage, death, or other harm for which the damages are allowed.

Tex. Civ. Prac. & Rem.Code Ann. §§ 33.012, 33.013 (Vernon Supp.2006).

Pilgrim's Pride and Appellees have different ways of applying these statutes.[1] Pilgrim's Pride seeks to apply the statutes, based on their text, as sequentially applied limits—that is, Section 33.012 makes an initial reduction in a claimant's recovery, and Section 33.013 further reduces it—while Appellees seek to apply the statutes in a broader sense, arguing caselaw.

Pilgrim's Pride urges a two-step calculation:

Step One. Section 33.012 says that, as to the *amount of recovery,* the trial court

2003, none of the amendments impact this discussion.

shall reduce the amount of damages by the percentage of the claimant's percentage of responsibility. Cernat was found twenty-five percent responsible. Thus, Cernat's maximum amount of recovery is reduced by the amount of his responsibility—from $120,000.00 to $90,000.00. Ciupitu was also found twenty-five percent responsible. His maximum amount of recovery should be reduced from $75,000.00 to $56,250.00.

Step Two. Section 33.013 says that Pilgrim's Pride is liable only for the percentage equal to its percentage of responsibility. Pilgrim's Pride was found to be fifty percent responsible. Thus, Pilgrim's Pride is liable for fifty percent of the maximum recovery of each plaintiff—resulting in a judgment in the amount of $45,000.00 for Cernat and $28,125.00 for Ciupitu.

In the alternative, Pilgrim's Pride argues that its liability should simply be calculated at fifty percent of the gross damages found by the jury. That would limit its liability to $97,500.00—fifty percent of $195,000.00. This turns out to be, in our view, the applicable methodology here.

Appellees argue that the amount of damages was properly reduced by the trial court pursuant to Section 33.012. The cases urged by Appellees—which analyzed the predecessor statute—would diminish a claimant's recovery by recognizing the proportion between the jury-assessed percentage of responsibility of the defendant to that of each claimant in turn, rather than using the strict percentage of responsibility found by the jury—reducing the recovery in the proportion that claimant's negligence bears to the combined negligence of that claimant and the party against whom he or she seeks recovery—without considering the negligence of the other claimant.[2] *See Haney Elec. Co. v. Hurst,* 624 S.W.2d 602, 611–12 (Tex.Civ.App.-Dallas 1981, writ dism'd w.o.j.). Appellees argue that the analysis they urge has since been used in other cases, that is, *Phelan v. Lopez,* 701 S.W.2d 327 (Tex.App.-Beaumont 1985, no writ), and *Sanchez v. Brownsville Sports Ctr.,* 51 S.W.3d 643 (Tex.App.-Corpus Christi 2001, vacated w/o op.) (vacated pursuant to request of settling parties). Appellees also cite *Roberts v. Williamson,* 111 S.W.3d 113, 122 (Tex.2003).

Appellees focus on the "proportion" language, as did the Dallas court in *Haney,* arguing that it supports a calculation for each Appellee's recovery that reduces the found damages for each Appellee by one-third, the proportion that Appellee's responsibility bears to the responsibility of Pilgrim's Pride. The *Haney* and *Sanchez* opinions state that this procedure allows each plaintiff to recover the amount to which he or she is entitled, in the proportion his or her responsibility bears to the combined responsibility of that plaintiff and the defendant.

Appellees appear to rely solely on Section 33.012 as the basis for this computation. They argue that Section 33.013 simply does not apply, because it applies only when two *defendants* are involved who share liability. In this case, we have two claimants and (effectively) one defendant who share responsibility.

Both *Haney* and *Phelan* were expressly decided based on language found in the former Article 2212a, Section 1 of the Texas Revised Civil Statutes. *See* Tex.Rev.

---

**2.** This is the calculation the trial court made and incorporated into the judgment. Removing one-third from Cernat's $120,000.00 in total damages yields a judgment for Cernat of $80,000.00, while removing one-third from Ciupitu's $75,000.00 in total damages yields a judgment for Ciupitu of $50,000.00.

Civ. Stat. Ann. art. 2212a, § 1. That statute provided that any damages allowed "shall be diminished in proportion to the amount of negligence attributed to the person or party recovering." The statute was repealed and recodified in 1985.[3] The current limitations, now contained in Sections 33.012 and 33.013, do not contain the "proportion" language on which the *Haney* and *Phelan* courts based their analyses. The "proportion" underpinning has been replaced by direct language stating that a court shall reduce the amount of recovery by a percentage equal to the claimant's percentage of responsibility. Tex. Civ. Prac. & Rem.Code Ann. § 33.012 (Vernon Supp.2006). We also note that the *Sanchez* opinion, not fully on point with the case before us, does not acknowledge that change in the law, nor does it address the language of the new statute in any fashion. *Sanchez* simply imported the reasoning of the prior cases without comment.

▪ We conclude that the calculations done by the trial court and urged here by Cernat and Ciupitu—that is, excluding Ciupitu's responsibility in calculating the recovery of Cernat based on the proportion of responsibility between Cernat and Pilgrim's Pride, and vice versa—is incorrect. In addition to the plain text of Sections 33.012 and 33.013, other provisions within the same statutory scheme, contained in Sections 33.001–33.017, also recommend our rejection of this approach. For example, Section 33.003 mandates the trier of fact to find, in whole numbers, the "percentage of responsibility" for a list of persons, including *"each claimant," "each defendant," "each settling person,"* and *"each responsible third party."* Tex. Civ. Prac. & Rem.Code Ann. § 33.003(a) (Vernon Supp.2006) (emphasis added). Section

33.011 contains similar language in defining "percentage of responsibility" to be a whole number percentage "attributed by the trier of fact to *each claimant,* each defendant, each settling person, or each responsible third party." Tex. Civ. Prac. & Rem.Code Ann. § 33.011(4) (Vernon Supp.2006) (emphasis added). The fact that "each claimant" is statutorily mandated to be within the assignment of responsibility leads us to conclude that calculating responsibility by eliminating a claimant is contrary to the intent of the Legislative scheme. *See Tex. Dep't of Pub. Safety v. Staples,* 882 S.W.2d 431 (Tex.App.-Houston [1st Dist.] 1994, writ denied) (plaintiff driver ninety percent responsible, defendant driver ten percent responsible, plaintiff passenger not responsible; defendant driver liable for only ten percent of plaintiff passenger's damages).

Therefore, the method used by the trial court in determining the amount of the judgment was error. But what is the correct calculation?

▪ When interpreting a statutory provision, we seek to find and apply the intent of the Legislature; and if the text is unambiguous, we will be guided by "the statute's plain language unless that interpretation would lead to absurd results." *Tex. Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc.,* 145 S.W.3d 170, 176–77 (Tex.2004). We start with the presumption "that every word in a statute is presumed to have been used for a purpose," and we attempt to give effect to each clause and word if reasonably possible. *Tex. Workers' Comp. Ins. Fund v. Del Indus., Inc.,* 35 S.W.3d 591, 593 (Tex.2000) (quoting *Perkins v. State,* 367 S.W.2d 140, 146 (Tex.1963)); *see Rich-*

---

**3.** Repealed by Act of June 16, 1985, 69th Leg., R.S., Ch. 959, § 9, 1985 Tex. Gen. Laws 3322 (effective Sept. 1, 1985) (current version at Tex. Civ. Prac. & Rem.Code Ann. §§ 33.012, 33.013).

ards v. Am. Nat'l Prop. & Cas. Co., 195 S.W.3d 758 (Tex.App.-Beaumont 2006, no pet.). Because we are to presume that "the entire statute is intended to be effective," Tex. Gov't Code Ann. § 311.021(2) (Vernon 2005), we also presume that each section in a statutory scheme is intended to harmonize within the scheme.

■■■ We observe, from Sections 33.012 and 33.013, that they do not reference each other or otherwise require that they be used sequentially to reduce recoveries, in the manner urged by Pilgrim's Pride's preferred position. Their terms simply appear to set up independent limits of recovery and liability. As pointed out by the Texas Supreme Court recently, Section 33.012 of the Texas Civil Practice and Remedies Code imposes limits on what a claimant may recover, and Section 33.013 limits the liability of a particular defendant who is not jointly and severally liable. *See Carl J. Battaglia, M.D., P.A. v. Alexander,* 177 S.W.3d 893, 906 (Tex.2005).

Other Texas Supreme Court precedent provides us guidance. *Roberts* addressed how a settlement credit would affect a calculation of proportional responsibility. *Roberts,* 111 S.W.3d 113. While no settlement credit is involved in this case, some of the discussion in the *Roberts* opinion is helpful:

> [A]lthough related, the two sections pose separate inquiries. Section 33.012 controls the claimant's total recovery, while section 33.013 governs the defendant's separate liability.
>
> Under section 33.012, the Williamsons' total recovery, including amounts received in settlement, is limited to $2,935,000, so they can receive no more

than $2,466,250 ($2,935,000–$468,750) in satisfaction of this judgment. *This limit, however, is independent of section 33.013's limitation on a particular defendant's percentage of responsibility.* And section 33.013(a) specifically pertains to defendants who, like Dr. Roberts here, are not jointly and severally liable. That section provides that a severally-liable defendant's monetary liability is calculated by multiplying the damages found by the trier of fact by the defendant's percentage of responsibility. *See C & H Nationwide, Inc. v. Thompson,* 903 S.W.2d 315, 321 (Tex.1994) ("Section 33.013(a) sets the liability to the claimant of each [severally liable] defendant at an amount equal to that defendant's percentage of responsibility multiplied by the damages found by the trier of fact."). The trial court did this when it multiplied the jury's damage award by the 15 per cent of proportionate responsibility it assigned to Dr. Roberts. Because Dr. Roberts' liability for $440,250, does not exceed the limit placed on the amount of damages the Williamsons may recover under section 33.012, no further credit [from the settlement] is required.

*Id.* at 123 (emphasis added). This recognizes that the two sections set independent limits on recoveries, here setting the maximum amount of the Cernat and Ciupitu judgment against Pilgrim's Pride.

■■ Thus, Section 33.012 limits Cernat's recovery to no more than seventy-five per cent[4] of $120,000.00, making Cernat's maximum recovery $90,000.00. It limits Ciupitu's recovery to no more than seventy-five percent[5] of $75,000.00, making Ci-

---

4. Since the jury found Cernat twenty-five per cent responsible, Section 33.012 mandates that his gross damages be reduced by that percentage—in other words, reduced to seventy-five percent of Cernat's gross damages.

5. Since the jury found Ciupitu twenty-five percent responsible, Section 33.012 mandates that his gross damages be reduced by that percentage—in other words, reduced to seventy-five percent of Ciupitu's gross damages.

upitu's maximum recovery $56,250.00. Independently, Section 33.013 sets a limit to Pilgrim's Pride's liability at no more than fifty percent of $195,000.00, making Pilgrim's Pride's maximum liability $97,500.00. Because the maximum recovery of Cernat and Ciuputu is $146,250.00, and the maximum liability of Pilgrim's Pride is $97,500.00, the judgment against Pilgrim's Pride must be reduced to a total of $97,500.00. Prorating yields a judgment for Cernat in the amount of $60,000.00 and a judgment for Ciuputu in the amount of $37,500.00. *See* Gregory J. Lensing, *Proportionate Responsibility and Contribution Before and After the Tort Reform of 2003*, 35 Tex. Tech L.Rev. 1125, 1137–39 (2004).[6]

The judgment of the trial court should be modified to reflect that calculation method.

*(2) Legally and Factually Sufficient Evidence Supports the Elements of Damages Awarded*

Pilgrim's Pride next contends the evidence is legally and factually insufficient to support the amount of the jury's award for lost earning capacity in the past, loss of earning capacity in the future, and future medical damages for Cernat. We disagree.

■■■■ In determining a no-evidence issue, we are to consider only the evidence and inferences that tend to support the finding and disregard all evidence and inferences to the contrary. *Bradford v. Vento*, 48 S.W.3d 749, 754 (Tex.2001); *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex.1996). Anything more than a scintilla of evidence is legally sufficient to support the finding. *Cazarez*, 937 S.W.2d at 450.

■■■■ When considering a factual sufficiency challenge to a jury's verdict, courts of appeals must consider and weigh all of the evidence, not just that evidence which supports the verdict. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex.1998). A court of appeals can set aside the verdict only if it is so contrary to the overwhelming weight of the evidence that the verdict is clearly wrong and unjust. *Id.; Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986). The court of appeals is not a fact-finder. Accordingly, the court of appeals may not pass on the witnesses' credibility or substitute its judgment for that of the jury, even if the evidence would clearly support a different result. *Ellis*, 971 S.W.2d at 407.

■■■■ The evidence of Cernat's past lost earning capacity is shown by his prior activities as compared with his activities after the accident. Cernat was a self-employed immigrant from Romania, who was naturalized in 1991. He had purchased and remodeled a home in Hot Springs, had purchased some land there, cleared it, and built on the property a four-car shop and garage in which he was planning to work as a mechanic. The record shows that he personally did all of the labor involved in these projects and also shows that he had worked on cars for acquaintances. Marin Tomulet, the owner of an automobile repair business, stated he had attempted to hire Cernat, but Cernat would not move to Dallas.

■■■■ Pilgrim's Pride argues that the award is unsupported because there was

---

6. In our case, the *effective,* or constraining, limit is set by Section 33.013. Since Sections 33.012 and 33.013 set independent limits, the effect is that variations in the number of plaintiffs, the number of defendants, and the percentages of responsibility of the various parties can change which of the two sections is the *effective* limit, that is, which one sets the lower limit in each particular case.

no evidence of Cernat's actual earnings before and after the injury. Loss of earning capacity, however, is not measured by what a person actually earned before injury, but what the worker's capacity to earn a livelihood actually was, even if he or she had never worked in that capacity in the past. *See McIver v. Gloria,* 140 Tex. 566, 169 S.W.2d 710, 712 (1943) (jury must determine value of minor's loss of earning capacity from common knowledge and sense of justice); *Pilgrim's Pride Corp. v. Smoak,* 134 S.W.3d 880, 900 (Tex.App.-Texarkana 2004, pet. denied); *Crown Plumbing, Inc. v. Petrozak,* 751 S.W.2d 936, 938 (Tex.App.-Houston [14th Dist.] 1988, writ denied). To recover for diminished earning capacity in a particular occupation, it is not always necessary for the plaintiff to have been working in and deriving earnings from that occupation before injury, as long as earnings from that occupation would provide a true measure of that plaintiff's earning capacity.

■ Pilgrim's Pride points to Cernat's lack of income-producing activity, coupled with his wife's testimony that the income reflected on their federal income tax returns was from her job as a nurse, to show that Cernat had no earning capacity. Lack of income does not necessarily prove lack of earning capacity. Cernat was not employed as a mechanic, though there was substantial evidence he had done such work regularly and been paid for it. It is beyond question Cernat was working on their residence and had built a garage and office building on land that he cleared of trees. This is not a situation where a "couch potato" was injured and then claimed lost income.

■ This is similar—though with genders switched—to cases where the plaintiff is a housewife. In such a situation, the actual money value of her services need not be proved. *McIver,* 169 S.W.2d

at 712. When a plaintiff is employed at a fixed wage or salary, the amount of his or her previous earnings ordinarily must be shown. *Id.; Smoak,* 134 S.W.3d at 903. To recover diminished earning capacity in a particular occupation, it is not always necessary for the plaintiff to have been working in and deriving earnings from that occupation before injury, as long as earnings from that occupation would provide a true measure of that plaintiff's earning capacity. *General Motors Corp. v. Burry,* No. 2–05–216–CV, 2006 WL 1791711, at *30 (Tex.App.-Fort Worth June 29, 2006, no pet.) (mem. op., not designated for publication).

Certainly, evidence exists that Cernat's physical limitations would prevent him from doing the type of physical labor he had been performing in the past; that these limitations would extend into the future; that he would suffer a permanent disability and a fifteen percent total body impairment; and that there were some things, such as climbing a ladder and driving a truck, he could no longer do. It is clear that Cernat's earning capacity was well in excess of the amount awarded by the jury, even if limited to the $30.00 per hour he earned in automobile repair, without recourse to the testimony about his expected income from the purchase, repair, and resale of wrecked automobiles.

Under these facts, based on the evidence of the type of work performed by Cernat that he was no longer capable of performing, and on the available evidence of his abilities and the income he had actually earned, we cannot conclude that the jury's award was without support in the record. The evidence is legally and factually sufficient to support the jury's award on lost earning capacity in the past.

Pilgrim's Pride also contends the findings of $17,000.00 in future medical damages to Cernat and $17,612.00 in future

medical damages to Ciupitu were without support in the evidence.

When an appellant attacks the legal sufficiency of an adverse finding on which he or she did not have the burden of proof, we must review the entire record for any probative evidence which, when viewed in its most favorable light, supports the adverse finding. *Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 782 (Tex. 2001). If there is more than a scintilla of evidence to support the verdict, we uphold the judgment. *Lenz v. Lenz*, 79 S.W.3d 10, 19 (Tex.2002). We must disregard all evidence and inferences to the contrary. *Id.*

In determining the factual sufficiency of the evidence, we consider and weigh all the evidence and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain*, 709 S.W.2d at 176; *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951); *Nat'l Freight, Inc. v. Snyder*, 191 S.W.3d 416, 425 (Tex.App.-Eastland 2006, no pet.).

Texas follows the "reasonable probability" rule for future damages from personal injuries. *Rosenboom Mach. & Tool, Inc. v. Machala*, 995 S.W.2d 817, 828 (Tex.App.-Houston [1st Dist.] 1999, pet. denied); *Hughett v. Dwyre*, 624 S.W.2d 401, 405 (Tex.App.-Amarillo 1981, writ ref'd n.r.e.). Thus, in order to recover future medical expenses, a plaintiff is required to show there is a reasonable probability that medical expenses resulting from the injury will be incurred in the future and then show the reasonable costs of such care. *Machala*, 995 S.W.2d at 828. It is within the jury's sound discretion to determine what amount, if any, to award in future medical expenses. *Bituminous Cas. Corp. v. Cleveland*, No. 07–05–0235–CV, 2006 WL 1418624, at *3, —— S.W.3d

—— (Tex.App.-Amarillo May 24, 2006, no pet.); *Thate v. Tex. & Pac. Ry. Co.*, 595 S.W.2d 591, 601 (Tex.Civ.App.-Dallas 1980, writ dism'd). Because no precise evidence is required, the jury may award such damages based on the nature of the injury, the medical care rendered before trial, and the condition of the injured party at the time of trial. *Snyder*, 191 S.W.3d 416; *City of San Antonio v. Vela*, 762 S.W.2d 314, 321 (Tex.App.-San Antonio, 1988, writ denied).

At the time of trial, Cernat was fifty-one years old, with a life expectancy of twenty-eight more years.

Dr. James Arthur performed back surgery on Cernat, and testified Cernat would require additional treatment, plus pain management, exercise, and massage or physical therapy. Arthur testified that Cernat's loss of range of motion and stiffness were permanent and would require the care listed above to ameliorate his problems. On cross-examination, Arthur agreed that Cernat did have some preexisting conditions, but they had not been causing Cernat any problems or pain before the accident. Cernat's medical bills before the trial for care related to the accident totaled $52,635.98.

Admittedly, there is no precise evidence about the amount of medical bills Cernat would incur in the future. There could not be. There was considerable evidence about the cost of his previous care, the types of care he was currently undergoing, and testimony that the pain and incapacity would continue, and that he would continue to need the care.

At the time of trial, Ciupitu was forty-seven years of age and had a life expectancy of thirty-one more years. Dr. Timothy English testified Ciupitu appeared with several different types of pain associated with back injuries and considerable lack of range of motion of his neck

and spine. English testified that an MRI was performed, which showed that Ciupitu had bulges in lumbar discs that narrowed the spinal canal, and annular tears reflective of an impact stress on the spine. English also testified that there was some damage to the higher levels of the spine, but that the lower back was worse. English also agreed that these types of spinal damage would result in pain of various sorts, as described by Ciupitu, including radiating pain down his leg from his left hip from the sciatic nerve cluster, and into both arms, and numbness of fingertips.

English prescribed Vioxx as an anti-inflammatory and Darvocet and Vicodin as painkillers. Ciupitu also underwent home and physical therapy and took training so that he could self-administer some types of therapy, along with various stretching exercises.

English testified that Ciupitu also had disc herniation at the lumbar level and discs bulging at different places in the spinal cord, that his likely condition (because of his age) was aggravated by the accident, that the combination would make him more likely to develop problems such as a ruptured disc in the future, that a disc had in fact ruptured before the date of trial, and that his condition and pain was presently much worse. English testified he believed that the ultimate rupture of the disc could have been as a result of the accident.

English testified that Ciupitu was not able to engage in strenuous manual labor, that Ciupitu was subject to chronic pain even before the rupture, and that, because Ciupitu had been his patient several years before the accident with no back complaints, English was comfortable in attributing the pain to the accident. English also said he was satisfied that there was a cause and effect link to the accident, and that Ciupitu would need additional treatment, but that the extent of treatment needed in the future for the ruptured disc was uncertain.

There is medical evidence of a nexus between the accident and Ciupitu's chronic pain and continuing therapy. There was evidence of an eventual rupture of a disc that English testified was probably linked to the trauma of the accident.

Although the evidence of past medical care for Ciupitu was for an amount less than the amount awarded for future medical care, there was evidence that his medical situation had taken a turn for the worse, a development linked to the accident. The reasonable value of his past treatment was established, and the probable necessity of future treatment was shown by the evidence. *See generally Machala*, 995 S.W.2d at 828. There is no evidence to the contrary, and the factfinder was within the range of its authority to determine this matter as it did based on the evidence presented.

This constitutes some evidence to support the verdict; and, after reviewing all of the evidence presented, we cannot conclude the jury's finding was against the great weight of the evidence. The evidence is legally and factually sufficient to support the verdict. We overrule these assertions of error.

*Conclusion*

Therefore, we modify the judgment to provide that Pilgrim's Pride is liable for fifty percent of the gross damages found as to each Appellee, that is, to Cernat in the resulting amount of $60,000.00 (rather than $80,000.00), and to Ciupitu in the resulting amount of $37,500.00 (rather than $50,000.00).

We affirm the judgment, as modified.