

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-18-00016-CV
_____

KILGORE INDEPENDENT SCHOOL DISTRICT, ET AL., Appellants

V.

DARLENE AXBERG, JOHN CLAUDE AXBERG,
SHEILA ANDERSON, AND THE STATE OF TEXAS, Appellees

On Appeal from the County Court at Law No. 2
Gregg County, Texas
Trial Court No. 2016-1850-CCL2

Before Morriss, C.J., Burgess and Moseley,* JJ.
Opinion by Justice Burgess

_____

*Bailey C. Moseley, Justice, Retired, Sitting by Assignment

## O P I N I O N

### I.  Introduction

In May 2015, the Texas Legislature passed a comprehensive school funding bill designated as SB-1.  In one of SB-1's provisions, the Legislature prohibited school districts from repealing or reducing the amount of any Local Option Homestead Exemption (LOHE)[1] that they had previously adopted.  The Governor signed SB-1 on June 15, 2015.  Apparently believing that a question existed about whether it had the authority to pass such a prohibition, the Legislature also passed a joint resolution, SJR-1, proposing an amendment to the Texas Constitution granting it the authority to "prohibit the governing body of a political subdivision that adopts a [LOHE] from reducing the amount of or repealing the exemption."  Tex. S.J. Res. 3, 84th Leg., R.S., § 1, sec. 1-b(e), 2015 Tex. Gen. Laws 5412, 5413–14; *see* TEX. CONST. art. VIII, § 1-b(c), (e).

The Legislature passed both SB-1 and SJR-1 on the same day.  The Legislature conditioned SB-1's effectiveness on the voter's approval of SJR-1, but it also stated that, in the event SJR-1 was approved, SB-1 would become effective on the date that SJR-1's proposed constitutional amendments took effect.  SJR-1 stated that the proposed amendments "take effect for the tax year beginning January 1, 2015."  Tex. S.J. Res. 3, 84th Leg., R.S., § 3(b), 2015 Tex. Gen. Laws 5412, 5414.  The Texas voters approved SJR-1 in the November 2015 election.

Two weeks after SB-1 was passed and signed by the Governor—but before the Texas citizens approved SJR-1—the Kilgore Independent School District (the District) repealed its

---

[1]The parties refer to the exemption allowed under Section 11.13(n) of the Texas Tax Code as the "local option homestead exemption."  *See* TEX. TAX CODE ANN. § 11.13(n) (West Supp. 2018).

LOHE. After SJR-1 was approved, the Texas Attorney General and the Texas Education Commissioner made written demand on the District to restore the LOHE. The District refused.

The individual taxpayers, Darlene Axberg, John Claude Axberg, and Sheila Anderson (collectively the Axbergs) then filed suit against the District seeking declaratory and injunctive relief. They also sought reimbursements of their excessive tax payments. The Texas Attorney General filed a petition in intervention requesting similar declaratory relief and requested that the trial court issue a writ of mandamus directing the District to comply with SB-1 and SJR-1. The District answered and asserted affirmative defenses.

Subsequently, the Axbergs and the State filed joint motions for summary judgment. The District filed an opposing motion for summary judgment. The trial court granted the plaintiffs' motion for summary judgment and denied the District's motion for summary judgment. The trial court granted declaratory relief, injunctive relief, mandamus relief, and restitution of the additional taxes paid by the individual plaintiffs. The District appeals, arguing that the trial court erred in granting summary judgment to the State and the Axbergs.

We agree that the trial court erred in granting summary judgment to the Axbergs, and we will reverse the summary judgment in favor of the Axbergs. However, we agree with the trial court that SB-1 and SJR-1 were intended to prohibit the District's repeal of its LOHE and rendered the District's repeal of no effect. Accordingly, to this extent, we will affirm the summary judgment in favor of the State.[2]

_____

[2]In addition, the Axbergs have filed a cross-appeal challenging our prior holding that the individuals had not acted *ultra vires* by failing to vote to reinstate the LOHE. *Kilgore Indep. Sch. Dist. v. Axberg*, 535 S.W.3d 21, 31–32 (Tex. App.—Texarkana 2017, no pet.). However, the Axbergs do not seek any relief in this Court, but merely seek to

3

## II. Background

### A. The Applicable Homestead Exemptions and the Effect of SB-1 and SJR-1

Texas law grants several types of homestead exemptions which exempt from taxation certain portions of the appraised or assessed value of an adult's residence homestead. *See* TEX. TAX. CODE ANN. § 11.13 (West Supp. 2018). Before the 2015 tax year, one of these exempted $15,000.00 of the homestead's appraised value from taxation by a school district (the State Homestead Exemption). Act of May 29, 2015, 84th Leg., R.S., ch. 465, § 1, sec. 11.13(b), 2015 Tex. Gen. Laws 1779, 1779 (current version at TEX. TAX CODE § 11.13(b)). Also, under Section 11.13(n), a local taxing unit may, at its option, grant an additional exemption of a percentage of the appraised value of a residence homestead, which cannot exceed twenty percent.[3] TEX. TAX CODE ANN. § 11.13(n). The District granted its residents a LOHE in the 1980s, which remained in effect until June 29, 2015.

#### 1. SB-1 Provisions

In 2015, the Legislature passed SB-1, which raised the State Homestead Exemption to $25,000.00[4] and created Section 11.13(n-1) of the Texas Tax Code, which states, in relevant part, "[A] school district . . . that adopted [a LOHE] under Subsection (n) for the 2014 tax year may not reduce the amount of or repeal the exemption. This subsection expires December 31, 2019"

---

preserve the issue in the event of an appeal to the Texas Supreme Court. Since no relief is sought in this Court, we need not address the cross-appeal.

[3]If the percentage produces an exemption of less than $5,000.00 for a particular homestead, the individual is allowed a $5,000.00 exemption. TEX. TAX CODE ANN. § 11.13(n).

[4]TEX. TAX CODE ANN. § 11.13(b).

(SB-1's repeal prohibition).[5]  Act of May 29, 2015, 84th Leg., R.S., ch. 465, § 1, sec. 11.13(n-1), 2015 Tex. Gen. Laws 1779, 1779 (current version at TEX. TAX CODE § 11.13(n-1)).

Section 27 of SB-1 states that the above provisions,[6] *inter alia*, "take[] effect on the date on which the constitutional amendment proposed by SJR-1 . . . takes effect," but if the voters do not approve the amendment, then SB-1 "has no effect."  Act of May 29, 2015, 84th Leg., R.S., ch. 465, § 27(a)(1), (2), 2015 Tex. Gen. Laws 1779, 1786.  In addition, Section 26 of SB-1 states that SB-1 "applies beginning with the 2015 tax year."  Act of May 29, 2015, 84th Leg., R.S., ch. 465, § 26, 2015 Tex. Gen. Laws 1779, 1786.  The governor signed SB-1 on June 15, 2015.  Act of May 29, 2015, 84th Leg., R.S., ch. 465, 2015 Tex. Gen. Laws 1779, 1786.

### 2.    SJR-1 Provisions

On the same day that the Legislature passed SB-1, it passed a joint resolution, SJR-1, which proposed amendments to Article VIII of the Texas Constitution that increased the amount of the State Homestead Exemption to $25,000.00, and provided that the Legislature "may prohibit the governing body of a political subdivision that adopts [a LOHE] from reducing the amount of or repealing the exemption."  Tex. S.J. Res. 3, 84th Leg., R.S., § 1, secs. 1-b(c), 1-b(e), 2015 Tex. Gen. Laws 5412, 5412–14; *see* TEX. CONST. art. VIII, § 1-b(c), (e).  SJR-1 provided that these proposed amendments "take effect for the tax year beginning January 1, 2015."  Tex. S.J. Res. 3,

---

[5]As mentioned, SB-1 was a comprehensive school funding bill.  The only portion of that bill at issue in this case is the provision creating Section 11.13(n-1) of the Texas Tax Code which prohibits a school district from repealing a LOHE.  For the sake of clarity, we shall refer to Section 11.13(n-1) of the Texas Tax Code as SB-1 or as SB-1's repeal prohibition.

[6]Although other provisions of SB-1 took effect immediately, we are only concerned in this case with the effective date of SB-1's repeal prohibition.  Act of May 29, 2015, 84th Leg., R.S., ch. 465, §§ 26–27(a)(1), 2015 Tex. Gen. Laws 1779, 1786.

84th Leg., R.S., § 3(b), 2015 Tex. Gen. Laws 5412, 5414. Voters approved the amendments proposed by SJR-1 on November 3, 2015.

### B. The District's Subsequent Action

On June 29, 2015, the District's Board of Trustees repealed its LOHE, effective for the 2015 tax year. On June 15, 2016, the Attorney General of Texas and the Texas Education Commissioner sent a joint letter to the District, alleging that the District's repeal of its LOHE violated SB-1's repeal prohibition.

### C. The Litigation

In September 2016, the Axbergs brought suit against the District[7] in which they alleged that the District violated SB-1's repeal prohibition by repealing the LOHE. As relevant to this appeal, the petition sought a declaratory judgment that (1) the repeal prohibition is constitutional; (2) the repeal prohibition and SJR-1, prohibit school districts from repealing or reducing a LOHE at any time between January 2015 and December 31, 2019; and (3) any repeal of or reduction in the amount of a LOHE by a school district is void as a matter of law. The petition also sought (1) a permanent injunction mandating that the District reinstate the LOHE for application in the 2015 through 2019 tax years and stop the collection of taxes subject to the LOHE, (2) a refund of the "illegally collected taxes" that the Axbergs claim to have paid under duress, and (3) attorney fees and costs.

---

[7]The Axbergs originally brought suit against the District; its seven trustees, in their official capacities; its superintendent, in her official capacity; and the Gregg County Tax Assessor-Collector, in his official capacity. The Axbergs subsequently nonsuited the tax assessor-collector. After this Court reversed the trial court's denial of the trustees' and superintendent's plea to the jurisdiction, *see Axberg*, 535 S.W.3d at 30, 33, all claims against these defendants were dismissed.

6

The State of Texas filed (1) an amended plea in intervention seeking a declaratory judgment that the District's repeal of its LOHE was in violation of SB-1 and SJR-1 and (2) a writ of mandamus ordering the District to comply with SB-1 and SJR-1. The District filed its first amended answer and asserted a general denial, a special denial,[8] affirmative defenses, and a counterclaim alleging that the Axbergs' suit was frivolous. Among its affirmative defenses, the District pleaded that applying SB-1 before November 3, 2015, would be unconstitutional under the Texas Constitution.

### D.      The Parties' Competing Motions for Summary Judgment

On March 29, 2017, the Axbergs and the State (jointly Appellees) filed a joint motion for traditional summary judgment in which they sought judgment (1) that SB-1 prohibited school districts from reducing or repealing the LOHE before SB-1 became law on November 3, 2015, and (2) that SB-1's repeal prohibition was not unconstitutionally retroactive. The Appellees argued that, by its terms, SB-1's repeal prohibition applied to the 2015 tax year and would take effect on the date the constitutional amendments took effect and that SJR-1 provided that the constitutional amendments therein "take effect for the tax year beginning January 1, 2015." Consequently, according to the Appellees, SB-1's repeal prohibition was retroactive to January 1, 2015.

Appellees also argued that it was constitutionally retroactive under the analysis set forth in *Robinson v. Crown Cork & Seal Co.*, 335 S.W.3d 126, 145 (Tex. 2010). In addition, the Appellees asked for summary judgment on the District's counterclaim. In their motion for summary

---

[8]In its special denial, the District asserted that all conditions precedent to the lawsuit had not been performed since the Axbergs had failed to exhaust their administrative remedies. In the prior appeal, we held that the Axbergs were not required to exhaust any administrative remedies. *Axberg*, 535 S.W.3d at 34.

7

judgment, the Appellees did not ask for judgment on their damages, for injunctive or mandamus relief, or for a refund of excess taxes paid. Attached to the motion were copies of SB-1 and SJR-1, but no other summary judgment evidence.

A hearing on the Appellees' motion was set for April 27, 2017. On April 18, 2017, the District filed its response to the motion for summary judgment. As relevant to this appeal, the District argued (1) that SB-1's repeal prohibition only applied prospectively, (2) that summary judgment was improper because the State had failed to comply with its discovery requests and the trial court had not ruled on the District's pending motions related to discovery, and (3) that there were genuine issues of material fact as to (a) whether each of the Axbergs was a taxpayer, (b) whether the Axbergs were denied a LOHE, and (c) whether the Axbergs were under duress when they paid their taxes. On April 24, 2017, the District filed its motion to compel the Axbergs to respond to its interrogatories, requests for production, and requests for admissions.

On April 25, 2017, the Axbergs filed the affidavits of John and Darlene Axberg and Sheila Anderson. Each of the affiants averred that they have a residence homestead located in the Kilgore Independent School District, that the District had assessed and collected taxes for the 2015 and 2016 tax years that would have been subject to the LOHE, and that they had paid those taxes under duress in order to avoid incurring penalties and interest under the Texas Tax Code. Each of the affidavits also had copies of tax receipts attached that evidenced each affiant's payment of taxes for the 2015 and 2016 tax years. The Axbergs did not seek leave of court to file the affidavits.

At the April 27, 2017, hearing on the motion for summary judgment, the District pointed out that the Axbergs had not filed their affidavits twenty-one days before the hearing. It argued

8

that, because they failed to timely file their affidavits, there was no evidence that they lived in the District, that they owned property, that they paid taxes, or that the District collected taxes. Although the trial court asked the Axbergs to address these issues, they did not request leave to file the affidavits, and the trial court did not indicate that it would allow the affidavits as summary judgment evidence.

### E. The Trial Court's Rulings

A decision on the motion for summary judgment was apparently put on hold while the District, its trustees, and its superintendent pursued an interlocutory appeal of the denial of their plea to the jurisdiction. After we issued our opinion in the interlocutory appeal, but before our mandate issued, the trial court sent a letter ruling announcing that it would grant the summary judgment. After the trial court received our mandate, it entered its amended final judgment on February 21, 2018.

In its amended final judgment, the trial court recited that, after considering and hearing the joint motion for summary judgment, the response, its file, and the arguments of counsel, it issued a separate order on December 7, 2017, by which it granted the joint motion for summary judgment and denied the District's counterclaims.[9] The judgment further declared, "[c]onsistent with that [letter],"

---

[9]No separate order granting the joint motion for summary judgment appears in the record on appeal. However, the record does contain a copy of a letter ruling from the trial court to the attorneys of record dated December 7, 2017, in which the trial court indicates it is granting the joint motion for summary judgment as to the effective date of SB-1, and on the District's counterclaims. In addition, the trial court requested that the Appellees submit a proposed Order in accordance with its letter ruling on the summary judgment, which resulted in the amended final judgment. Since there were no hearings after the summary judgment hearing, the amended final judgment was based solely on the summary judgment record. Therefore, we construe it as a final summary judgment.

1.      that [SB-1's repeal prohibition] is constitutional as a matter of law;

2.      that [SB-1's repeal prohibition] prohibits school districts from repealing or reducing the amount of a local option homestead exemption, at any time between January 1, 2015[,] through December 31, 2019, that was adopted for the 2014 tax year; [and]

3.      that the acts of the Defendants complained of by Plaintiffs and Intervenor are in violation of S.B. 1 and S.J.R. 1. Therefore, the repeal and any reduction by Defendant Kilgore Independent School District of the local option homestead exemption that it adopted for the 2014 tax year violates [SB-1's repeal prohibition] and, therefore, has no effect and is void as a matter of law.

In addition, the judgment ordered the District to "stop assessing and collecting property taxes through December 31, 2019 that are subject to the local option homestead exemption that it adopted for the 2014 tax year," and to "disgorge and refund to Plaintiffs those property taxes that it has collected for tax years 2015, 2016, and 2017 that are subject to the local option homestead exemption that it adopted for the 2014 tax year."[10]

**F.     The Appeal**

On appeal, the District complains that the trial court erred in granting summary judgment to the Axbergs and the State because (1) the plain language of SB-1 and SJR-1 and established rules of statutory interpretation require that they be read prospectively; (2) the Axbergs' untimely filed evidence could not be considered in support of their motion for summary judgment; (3) the

---

[10]Although the trial court granted more relief than was requested in its final summary judgment, we treat it as a final judgment, consider all matters raised, and reverse "only those portions of the judgment based on harmful error." *G & H Towing Co. v. Magee*, 347 S.W.3d 293, 298 (Tex. 2011) (per curiam) (citing *Page v. Geller*, 941 S.W.2d 101, 102 (Tex. 1997) (per curiam)).

trial court denied discovery to the District; and (4) the trial court improperly granted damages to the Axbergs.[11]

## III. The Trial Court Erred in Granting Summary Judgment for the Axbergs

In its third issue, the District complains that the trial court erred in granting summary judgment in favor of the Axbergs because there was no competent summary judgment evidence showing (1) that the Axbergs were taxpayers living within the school district, (2) that they had paid taxes, or (3) that they were assessed and paid taxes that did not include the LOHE. Without such evidence, the District argues, the Axbergs did not establish that they were entitled to judgment as a matter of law. The District acknowledges that the Axbergs filed affidavits regarding these matters, but argues that, since they were filed two days before the summary judgment hearing without leave of court, they cannot be considered.

Although the Axbergs concede that whether they lost their LOHE as a result of the District's repeal and whether they paid their taxes are relevant fact questions, they contend that these questions were conclusively established by their affidavits filed two days before the summary judgment hearing. They did not file their affidavits with their summary judgment motion, they explain, because they thought these issues were not in dispute because the District did not file a plea to the jurisdiction. They state that they did not request leave of court to file the affidavits for

---

[11]Initially, the District also contended on appeal that, if SB-1 and SJR-1 apply retroactively, the trial court erred in granting summary judgment because the summary judgment evidence failed to satisfy the *Robinson* analysis. In *Robinson*, the Texas Supreme Court set forth an analysis to determine whether a statute violates the prohibition against retroactive laws contained in Article I, Section 16, of the Texas Constitution, at least in those instances in which the statute impairs private interests. *Robinson*, 335 S.W.3d at 145–46. At oral argument, however, the District's counsel conceded that SB-1 and SJR-1 would not be unconstitutional as to the District if applied retroactively. Therefore, we do not address this issue.

the same reason. The Axbergs then argue that the trial court either agreed that the affidavits were unnecessary or that it granted *de facto* leave of court and considered the evidence in granting the summary judgment.[12]

### A.    Standard of Review

As discussed above, the Axbergs filed a traditional motion for summary judgment seeking a declaratory judgment that the prohibition against repealing the LOHE was retroactive and that it was not unconstitutional. To be entitled to a declaratory judgment, there must be a justiciable controversy "as to the rights and status of the parties and the controversy will be resolved by the declaration sought." *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995) (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993)). "To constitute a justiciable controversy, there must exist a real and substantial controversy involving genuine conflict of tangible interests and not merely a theoretical dispute." *Id.* (quoting *Bexar-Medina-Atascosa Ctys. Water Control & Improvement Dist. No. 1 v. Medina Lake Prot. Ass'n*, 640 S.W.2d 778, 779–80 (Tex. App.—San Antonio 1982, writ ref'd n.r.e.)).

We review de novo a trial court's grant of a summary judgment. *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018) (citing *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003)). "A traditional motion for summary judgment requires the moving party to show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." *Id.* (citing TEX. R. CIV. P. 166a(c); *Provident Life*, 128 S.W.3d at 215–16). "The movant

---

[12]At oral argument, the Axbergs conceded that there was nothing in the record showing that the trial court considered the affidavits.

must establish its right to summary judgment on the issues expressly presented to the trial court by conclusively proving all elements of the movant's cause of action or defense as a matter of law." *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999) (citing *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996)).

### B.     Analysis

Although the Axbergs address the District's third issue in terms of standing, we interpret the District's issue as challenging whether the Axbergs established that there were no genuine issues of material fact so that they were entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c). In their original petition, the Axbergs alleged, *inter alia*, that they were taxpayers whose homesteads were within the boundaries of the school district, that the District illegally repealed its LOHE, that the District assessed and collected taxes that were subject to the LOHE, and that the Axbergs were forced, under duress, to pay taxes that were subject to the LOHE. The District filed a general denial, which placed these allegations in issue. *See* TEX. R. CIV. P. 92; *see also Shell Chem. Co. v. Lamb*, 493 S.W.2d 742, 744 (Tex. 1973) ("It is well settled that a general denial puts the plaintiff . . . on proof of every fact essential to his case and issue is joined on all material facts asserted by plaintiff . . . , except those which are required to be denied under oath.").

The Axbergs sought declaratory relief by way of summary judgment. Because the Axbergs' allegations establishing that there was a real and substantial controversy (i.e., that as taxpayers residing in the school district they had been assessed taxes by, and paid taxes to, the District that were subject to the repealed LOHE) were placed in issue by the District's general denial, the Axbergs were required to bring forth summary judgment proof establishing that there

13

was a real and substantial controversy in order to establish their entitlement to a declaratory judgment. In other words, they were required to bring forth summary judgment proof establishing that they were taxpayers residing in the school district and that they had been assessed taxes by, and paid taxes to, the District that were subject to the LOHE. In the absence of such proof, they could not establish that there was a real and substantial controversy, and they would not be entitled to summary judgment.

It is uncontested that the only evidence of these facts was contained in the Axbergs' affidavits filed two days before the summary judgment hearing, without leave of court. Yet, affidavits supporting a motion for summary judgment must be filed at least twenty-one days before the summary judgment hearing, unless the party seeks and receives leave of court. TEX. R. CIV. P. 166a(c); *Benchmark Bank v. Crowder*, 919 S.W.2d 657, 663 (Tex. 1996). "Because summary judgment is a harsh remedy, we strictly construe the twenty-one day time limit." *Luna v. Estate of Rodriguez*, 906 S.W.2d 576, 582 (Tex. App.—Austin 1995, no writ) (citing *Wavell v. Caller-Times Publ'g Co.*, 809 S.W.2d 633, 637 (Tex. App.—Corpus Christi 1991, writ denied), *abrogated on other grounds by Cain v. Hearst Corp.*, 878 S.W.2d 577 (Tex. 1994)).

Although a trial court may consider late-filed summary judgment evidence, there must be an affirmative indication that it accepted or considered the evidence. *Clarksville Oil & Gas Co., Ltd. v. Carroll*, No. 06-11-00017-CV, 2011 WL 5044115, at *2 (Tex. App.—Texarkana Sept. 1, 2011, no pet.) (mem. op.); *SP Terrace, L.P. v. Meritage Homes of Tex., LLC*, 334 S.W.3d 275, 281–82 (Tex. App.—Houston [1st Dist.] 2010, no pet.). "If no order in the record indicates that the court gave leave to file untimely evidence, then we presume that the trial court did not consider

the evidence." *Id.* (quoting *S.P. Terrace*, 334 S.W.3d at 281–82); *see Crowder*, 919 S.W.2d at 663. Likewise, we cannot consider it on appeal. *Crowder*, 919 S.W.2d at 663; *Pinnacle Data Servs., Inc. v. Gillen*, 104 S.W.3d 188, 192 (Tex. App.—Texarkana 2003, no pet.), *disapproved on other grounds by Richie v. Rupe*, 443 S.W.3d 856, 871 n.17 (Tex. 2014).

In this case, the Axbergs' affidavits were filed two days before the hearing, and they neither sought nor received leave of court for the untimely filing. There is no order or other indication in the record that the trial court accepted or considered the late-filed affidavits. Consequently, there was no evidence that the Axbergs were taxpayers residing in the school district, or that they had been assessed taxes by, and paid taxes to, the District that were subject to the LOHE. Therefore, there was no evidence that there was a real and substantial controversy that entitled the Axbergs to the declaratory judgment as a matter of law.

Likewise, without the Axbergs' affidavits, there was no evidence that the District assessed and collected property taxes subject to the LOHE, or that the District collected property taxes for the tax years 2015, 2016, and 2017 from the Axbergs. Consequently, the Axbergs failed to establish, as a matter of law, that they were entitled to injunctive relief[13] and a refund of property

---

[13]To be entitled to injunctive relief, the Axbergs had to establish "(1) a wrongful act, (2) imminent harm, (3) irreparable injury, and (4) no adequate remedy at law." *Long Canyon Phase II & III Homeowners Ass'n, Inc. v. Cashion*, 517 S.W.3d 212, 224 (Tex. App.—Austin 2017, no pet.).

15

taxes.[14]   Therefore, we hold that the trial court erred in granting summary judgment for the Axbergs.  We sustain the District's third issue.[15]

## IV.   The Trial Court Correctly Granted Summary Judgment for the State

The trial court also granted summary judgment for the State.  The parties do not dispute that the State is a proper party in this case and that it could ask for the declaratory relief granted by the trial court.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.006(b) (West 2015) (providing that, when declaratory relief is sought and a statute is alleged to be unconstitutional, "the attorney general of the state must also be served with a copy of the proceeding and is entitled to be heard").  Therefore, we must determine whether the trial court erred in its determination that SB-1's repeal

---

[14]Although not addressed by the parties, we also note that the Axbergs' motion for summary judgment did not assert their entitlement to judgment on their application for an injunction or on their claim for a refund of taxes.  Generally, "[s]ummary judgments . . . may only be granted upon grounds expressly asserted in the summary judgment motion." *G & H Towing Co. v. Magee*, 347 S.W.3d 293, 297 (Tex. 2011) (per curiam) (citing TEX. R. CIV. P. 166a(c)).

[15]We note there is caselaw holding that, "in both a plea to the jurisdiction and a traditional motion for summary judgment, the defendant bears the burden of proving the trial court's lack of jurisdiction." *Green Tree Servicing, LLC v. Woods*, 388 S.W.3d 785, 792 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (citing *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985)).  In *Green Tree*, the court of appeals held that standing could not be challenged in a no-evidence motion for summary judgment because "allowing a challenge to subject-matter jurisdiction in a no-evidence motion for summary judgment would have the effect of depriving a trial court of jurisdiction over a case in circumstances in which jurisdiction has not been affirmatively disproved." *Id*. at 794.  It also noted that "a traditional motion for summary judgment can only be granted after the defendant establishes as a matter of law that the [trial court] lacks subject-matter jurisdiction." *Id*.

Yet, in *Green Tree*, the *defendants* moved for summary judgment seeking dismissal of the plaintiff's suit for lack of standing.  And, in summary judgment practice, the moving party bears the burden of establishing its entitlement to summary judgment.  TEX. R. CIV. P. 166a(c); *Helix Energy Sols. Grp., Inc. v. Gold*, 522 S.W.3d 427, 431 (Tex. 2017).  Accordingly, *Green Tree* does not stand for the proposition that the defendant always bears the burden of negating standing.  Rather, it merely holds that *when a defendant moves for summary judgment on the basis of the plaintiff's lack of standing*, the defendant bears the burden of negating standing as a matter of law.

Here, the District did not move for summary judgment on the basis that the Axbergs lacked standing.  Rather, the Axbergs moved for summary judgment on their affirmative claims for relief against the District.  As part of their burden, the Axbergs were required to establish that there was no genuine issue of material fact and that they were entitled to judgment as a matter of law on every element of their cause of action.  Standing is one of those elements.  Therefore, in the posture in which this case is presented to us, the District was not required to negate standing; rather, the Axbergs had the burden of establishing standing.  Because they did not present any evidence to establish that they were taxpayers and that they had paid excessive taxes, they have failed to satisfy their burden of proof.

16

prohibition prohibits school districts from repealing or reducing the amount of a LOHE between January 1, 2015, and December 31, 2019, and whether the District's repeal and any reduction of its LOHE has no effect and is void.

In its first issue, the District contends that the trial court erred in granting the declaratory relief because SB-1 and SJR-1 are prospective. The District argues that, since the general presumption is that a statute is prospective, and since SB-1 and SJR-1 can be read prospectively, then we should hold that the statute and constitutional amendment are prospective. Essentially, the District argues that SB-1's repeal prohibition became effective on November 3, 2015, when SJR-1 was approved by the Texas citizens and, therefore, could only prohibit the repeal of any LOHE after that date. Because it repealed its LOHE some five months prior to that date, the District argues that SB-1's repeal prohibition does not apply.

On the other hand, SJR-1 states that the proposed amendments therein "take effect for the tax year beginning January 1, 2015." Tex. S.J. Res. 3, 84th Leg., R.S., § 3(b), 2015 Tex. Gen. Laws 5412, 5414. And Section 27 of SB-1 states that the provisions in question in this case "take[] effect on the date on which the constitutional amendment proposed by SJR-1 . . . takes effect . . . ." Act of May 29, 2015, 84th Leg. R.S., ch. 465, § 27(a)(1), (2), 2015 Tex. Gen. Laws 1779, 1786. In addition, Section 26 of SB-1 states that SB-1 "applies beginning with the 2015 tax year." Act of May 29, 2015, 84th Leg. R.S., ch. 465, § 27(a)(1), (2), 2015 Tex. Gen. Laws 1779, 1786. Thus, SJR-1 can be read as holding that it applies prospectively from the date it became effective, and because SJR-1 became effective January 1, 2015, SB-1's repeal prohibition applied prospectively

17

from January 1, 2015, rather than November 3, 2014. Consequently, we are presented with a question of statutory interpretation.

### A.     Standard of Review

Statutory construction is a question of law that we review de novo. *MCI Sales & Serv., Inc. v. Hinton*, 329 S.W.3d 475, 499 (Tex. 2010); *McIntyre v. Ramirez*, 109 S.W.3d 741, 745 (Tex. 2003). Our primary goal in construing a statute is to ascertain and give effect to the legislature's intent. *Hinton*, 329 S.W.3d at 499; *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865 (Tex. 1999); *Pilgrim's Pride Corp. v. Cernat*, 205 S.W.3d 110, 117 (Tex. App.—Texarkana 2006, pet. denied). "Where the text is clear, text is determinative of that intent." *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009) (citing *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006)). This is because "the Legislature expresses its intent by the words it enacts and declares to be the law." *Bosque Disposal Sys., LLC v. Parker Cty. Appraisal Dist.*, 555 S.W.3d 92, 94 (Tex. 2018) (quoting *Molinet v. Kimbrell*, 356 S.W.3d 407, 414 (Tex. 2011)).

To ascertain that intent, we look first to the "plain and common meaning of the statute's words." *McIntyre*, 109 S.W.3d at 745 (quoting *State ex rel. State Dep't of Highways & Pub. Transp. v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002); *Fitzgerald*, 996 S.W.2d at 865); *see* TEX. GOV'T CODE ANN. § 311.011 (West 2013). We construe the statute according to its plain language if the language is unambiguous. *McIntyre*, 109 S.W.3d at 745; *Fitzgerald*, 996 S.W.2d at 865; *Cernat*, 205 S.W.3d at 117. "This general rule applies unless enforcing the plain language of the

18

statute as written would produce absurd results." *Summers*, 282 S.W.3d at 437 (citing *Fleming Foods of Tex., Inc. v. Rylander*, 6 S.W.3d 278, 284 (Tex. 1999)).

Further, in determining legislative intent, we look to the statute as a whole and not isolated portions. *In re M.N.*, 262 S.W.3d 799, 802 (Tex. 2008). We presume that the Legislature had a purpose for words included in the statute and that it purposefully omitted words excluded from the statute. *Id.*; *Cernat*, 205 S.W.3d at 117. When a statutory term is undefined, we will not find "a meaning that is out of harmony or inconsistent with other provisions in the statute." *McIntyre*, 109 S.W.3d at 745. In other words, we look to the meaning of the words used, or of a particular clause, within the context of the statute, which "requires us to study the language of the specific provision at issue, within the context of the statute as a whole, endeavoring to give effect to every word, clause, and sentence." *Ritchie v. Rupe*, 443 S.W.3d 856, 867 (Tex. 2014) (citing *In re Office of Att'y Gen.*, 422 S.W.3d 623, 629 (Tex. 2013); *Fitzgerald*, 996 S.W.2d at 866). Generally, "the words [the Legislature] chooses should be the surest guide to legislative intent." *Summers*, 282 S.W.3d at 437 (quoting *Fitzgerald*, 996 S.W.2d at 866). "Only when those words are ambiguous do we 'resort to rules of construction or extrinsic aids.'" *Id.* (quoting *In re Estate of Nash*, 220 S.W.3d 914, 917 (Tex. 2007)).

To determine whether a constitutional amendment is intended to apply retroactively, "we look to the language of the amendment, its legislative history, its purpose and the circumstances of its enactment." *Beck v. Beck*, 814 S.W.2d 745, 748 (Tex. 1991); *Stringer v. Cendant Mortg. Corp.*, 23 S.W.3d 353, 354 (Tex. 2000). In "interpreting our state Constitution, we rely heavily on its literal text." *Bosque Disposal Sys., LLC*, 555 S.W.3d at 94 (quoting *Republican Party of*

*Tex. v. Dietz*, 940 S.W.2d 86, 89 (Tex. 1997)). "[O]ur goal is to 'give effect to its plain language.'" *Id.* (quoting *City of Beaumont v. Bouillion*, 896 S.W.2d 143, 148 (Tex. 1995)).

## B. Analysis

### 1. The Presumption that Constitutional Amendments and Statutes Operate Prospectively Does Not Apply to SB-1 and SJR-1

The District is correct that constitutional amendments generally are presumed to operate prospectively. *See Cox v. Robison*, 150 S.W. 1149, 1156 (Tex. 1912); *Fix v. Flagstar Bank, FSB*, 242 S.W.3d 147, 155 (Tex. App.—Fort Worth 2007, pet. denied). However, "they may operate retroactively when it is apparent that such was the intention, provided no impairment of vested rights results" from the retroactive application of the amendment. *Cox*, 150 S.W. at 1156; *Fix*, 242 S.W.3d at 155. Texas courts also "generally presume that statutes are prospective unless they are expressly made retroactive." *City of Austin v. Whittington*, 384 S.W.3d 766, 790 (Tex. 2012) (citing TEX. GOV'T CODE ANN. § 311.022; *State v. Fid. Deposit Co. of Md.*, 223 S.W.3d 309, 311–12 (Tex. 2007) (per curiam)). "However, this general rule does not apply when the statute or amendment is procedural or remedial." *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 219 (Tex. 2002). "This is because procedural and remedial statutes typically do not affect a vested right." *Id.* (citing *City of Tyler v. Likes*, 962 S.W.2d 489, 502 (Tex. 1997)). Thus, when a statute does not affect a vested right, the presumption that it is to be read prospectively does not apply. *Id.* at 223.

"A vested right is a property right, which the Constitution protects like any other property." *Id.* However, a vested right must be "something more than a mere expectancy based upon an anticipated continuance of an existing law." *Honors Academy, Inc. v. Tex. Educ. Agency*, 555

20

S.W.3d 54, 61 (Tex. 2018) (quoting *City of Dallas v. Trammell*, 101 S.W.2d 1009, 1014 (Tex. 1937)). Further, "a governmental entity acquires no vested rights against the State." *Id.* at 67–68 (quoting *Tooke v. City of Mexia*, 197 S.W.3d 325, 345 (Tex. 2006)). Since the District had no vested right in the continuance of existing law and acquired no vested rights against the State, we find that the presumption that constitutional amendments and statutes are to be read prospectively does not apply in determining whether SB-1 and the constitutional amendments proposed in SJR-1 operate retroactively. *See Subaru of Am., Inc.*, 84 S.W.3d at 219, 223.

However, the absence of the presumption that statutes and constitutional amendments apply prospectively does not resolve the question. While we may not presume that SJR-1 and SB-1 applied prospectively, neither may we presume that they apply retroactively. Rather, we must examine SB-1 and SJR-1 according to the canons of statutory interpretation to determine if they apply retroactively. To make this determination, "we look to the language of the amendment, its legislative history, its purpose and the circumstances of its enactment." *Beck*, 814 S.W.2d at 748. We will first consider whether SJR-1 applied retroactively. Then we will examine whether SB-1 did so as well.

2. **Whether the Constitutional Amendments Proposed by SJR-1 Operate Retroactively**

a. **SJR-1's Plain Language Supports the Conclusion that the Constitutional Amendments Therein Were Intended to Apply Retroactively**

First, we look to the provisions of SJR-1. Generally, constitutional amendments take effect "on the date that the official c[a]nvass of the returns shows that it has been adopted." *Torres v. State*, 278 S.W.2d 853, 855 (Tex. Crim. App. 1955); *see* TEX. CONST. art. XVII, § 1(c); TEX. ELEC.

21

CODE ANN. §§ 67.010(a), 67.013–14 (West 2010), § 67.012 (West Supp. 2018). For these amendments, that date was November 3, 2015. However, SJR-1 contained a temporary provision that provided, "The amendments to Sections 1-b(c), (d), and (e), Article VIII, of this constitution take effect for the tax year beginning January 1, 2015." Tex. S.J. Res. 3, 84th Leg., R.S., § 3(b), 2015 Tex. Gen. Laws 5412, 5414.

The District argues that SJR-1's constitutional amendments took effect on November 3, 2015, so that the temporary provision simply means they were effective for the remainder of the 2015 tax year. However, those amendments would have been effective for the remainder of the 2015 tax year under the general rule, even without the temporary provision. We presume there is a purpose for every word and clause used, since the words used are the surest guide to the intent. *See Summers*, 282 S.W.3d at 437; *M.N.*, 262 S.W.3d at 802. The inclusion of the temporary provision specifying that SJR-1's constitutional amendments took effect for the tax year *beginning* January 1, 2015, indicates that those amendments were intended to be effective for the entire 2015 tax year, and not just that portion remaining after the passage of the amendments by the voters.

**b.** **The Purpose and Legislative History Behind SJR-1 Supports the Conclusion that the Constitutional Amendments Therein Were Intended to Apply Retroactively**

We next turn to the purpose behind SJR-1. As noted, SJR-1 proposed two constitutional amendments to Article VIII, Section 1-b, of the Texas Constitution that are relevant to our analysis. First, it proposed to increase the State Homestead Exemption for public school purposes from $15,000.00 to $25,000.00. Tex. S.J. Res. 3, 84th Leg., R.S., § 1, secs. 1-b(c), 2015 Tex. Gen. Laws 5412, 5412–13; *see* TEX. CONST. art. VIII, § 1-b(c). It is apparent from the face of this amendment

22

that its purpose was to provide a reduction in the property taxes paid by Texas taxpayers. SJR-1 also proposed authorizing the Legislature to prohibit a political subdivision that adopted a LOHE from reducing the amount of or repealing the exemption. Tex. S.J. Res. 3, 84th Leg., R.S., § 1, secs. 1-b(e), 2015 Tex. Gen. Laws 5412, 5413–14; *see* TEX. CONST. art. VIII, § 1-b(e). Since allowing a political subdivision to reduce or repeal its LOHE could lessen, or possibly eliminate, the benefit of the tax reduction resulting from the increase in the State Homestead Exemption, it follows that the purpose of this amendment was to provide a mechanism by which the Legislature could ensure that all Texas taxpayers received the full benefit of the increase in the State Homestead Exemption.[16]

This brings us to the circumstances of SJR-1's enactment. At the time that SB-1 was passed, it appears the Legislature did not believe it had the constitutional authority to raise the State Homestead Amendment to $25,000.00 and to prohibit school districts that had adopted a LOHE from reducing the amount of or repealing the exemption before December 31, 2019, both of which were included in SB-1 that was passed by the Legislature on May 29, 2015. *See* TEX. TAX CODE ANN. § 11.13(b), (n-1). While we are not asked to decide whether the Legislature had such authority, even if the Legislature did not have the authority to take those actions on May 29, 2015, an invalid statute may be cured by the approval of a constitutional amendment that "impliedly validate[s] a statute that was originally beyond the legislature's power to enact if it does

---

[16]Under SJR-1's terms, taxpayers in districts without LOHEs would receive a $10,000.00 increase in their homestead exemption upon approval of SJR-1. In districts with LOHEs, the taxpayers would receive the same $10,000.00 increase in homestead exemption, but if the district could then repeal the LOHE, their $10,000.00 increase would be offset by the loss of the LOHE. Thus, only by prohibiting districts from repealing LOHEs could the Legislature ensure that all Texas taxpayers received the same benefit from SB-1's increase in homestead exemption.

not impair the obligation of a contract or impair vested rights." *Beck*, 814 S.W.2d at 747 (citing W. H. Beach, Annotation, *Removal or Suspension of Constitutional Limitation As Affecting Statute Previously Enacted*, 171 A.L.R. 1070, 1072–73 (1947)). We presume that the Legislature was aware of existing law when it enacted SB-1. *In re Allen*, 366 S.W.3d 696 (Tex. 2012) ("We presume the Legislature is aware of relevant caselaw when it enacts or modifies statutes."). Therefore, we presume that the Legislature knew that, even if it lacked the authority to enact portions of SB-1 on May 29, 2015, a subsequently approved constitutional amendment granting it that authority would cure that problem.

As previously noted, SJR-1, which proposed the subject amendments, was passed by the Legislature on the same day as SB-1. The temporary provision in SJR-1 that specified that the amendments took effect for the tax year beginning January 1, 2015, specifically listed the amendments raising the State Homestead Exemption and authorizing the Legislature to prohibit a political subdivision that had adopted a LOHE from reducing the amount of or repealing the exemption. In view of the presumption that the Legislature knew of existing law, these circumstances indicate that the amendments were intended to apply retroactively in order to validate the prior actions of the Legislature in raising the homestead exemption and in prohibiting the repeal of a previously-adopted LOHE. *See id.* at 748–49.

Based on the language of the amendments, their purpose, and the circumstances of their enactment, we conclude that the amendments operate retroactively and apply to the entire 2015 tax year, beginning January 1, 2015, and that they were intended to impliedly validate SB-1's

24

provisions increasing the State Homestead Exemption and prohibiting the repeal of any previously-adopted LOHE.[17]  *See id.*

### 3.    Whether SB-1's Repeal Prohibition took Effect on January 1, 2015

#### a.    The Plain Language of SB-1's Repeal Prohibition Supports the Conclusion that It took Effect on January 1, 2015

Having resolved that SJR-1's constitutional amendments took effect January 1, 2015, we must now decide whether SB-1's repeal prohibitions also took effect on January 1, 2015.

An examination of the plain language of SB-1 shows that its provisions "appl[y] beginning with the 2015 tax year," that the sections that increased the homestead exemption and prohibited the repeal of any previously-adopted LOHE "[took] effect on the date on which the constitutional amendment proposed by SJR-1 . . . [took] effect," and that, "if that amendment [was] not approved by the voters, this Act [had] no effect."  Act of May 29, 2015, 84th Leg., R.S., ch. 465, §§ 26–27, 2015 Tex. Gen. Laws 1779, 1786.  Thus, for the increase in the State Homestead Exemption and SB-1's repeal prohibition to become fully operational, the approval of SJR-1 by the voters was required.  When the voters approved SJR-1, these sections became fully operational and, under the plain language of SB-1, took effect on the same date as the constitutional amendments, which we have determined to be January 1, 2015.  Thus, the plain language of SB-1 shows that the

---

[17]Although the parties devote much of their briefs to arguing whether SB-1's repeal prohibition applies retroactively, we need not decide this issue under the facts of this case.  As the Supreme Court has recognized, in considering whether a statute operates retroactively, "the court must ask whether the new provision attaches new legal consequences to events completed before its enactment."  *Quick v. City of Austin*, 7 S.W.3d 109, 132 (Tex. 1998) (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 269–70 (1994)).  In this case, SB-1 was passed by the Legislature on May 29, 2015, and it was signed by the governor on June 15, 2015.  The District did not repeal its LOHE until June 29, 2015.  Since SB-1 was enacted before the District's repeal, any consequences SB-1's repeal prohibition has on a District's LOHE repeal would be prospective, not retroactive.

Legislature intended the increase in the State Homestead Exemption and SB-1's repeal prohibition to apply to the 2015 tax year and that they took effect beginning January 1, 2015.

This interpretation also furthers the purposes of these statutes and the constitutional amendments by ensuring that all Texas taxpayers benefit from the increased State Homestead Exemption. In SB-1, the Legislature sought to enact statutes consistent with the constitutional amendments proposed in SJR-1 by, *inter alia*, increasing the State Homestead Exemption and by prohibiting school districts, municipalities, and counties that had adopted a LOHE for the 2014 tax year from reducing the amount of or repealing the exemption until December 31, 2019. *See* Act of May 29, 2015, 84th Leg., R.S., ch. 465, § 1, sec. 11.13(b), (n-1), 2015 Tex. Gen. Laws 1779, 1779. As with the constitutional provisions, the purpose of these enactments was to provide a reduction in property taxes for Texas taxpayers and to provide a mechanism that would ensure that all Texas taxpayers would benefit fully from the increased State Homestead Exemption.[18]

The District focuses on the Legislature's use of "may not" in SB-1's repeal prohibition and of "may" in SB-1's homestead exemption increase and argues that the use of these verb tenses indicates that SB-1 and SJR-1 were meant to operate prospectively and only after the approval of the constitutional amendments by the voters. Under its theory, the only provisions in SB-1 and SJR-1 that would apply beginning January 1, 2015, were those that increased the State Homestead Exemption. The District argues that, since SB-1's repeal prohibition was conditioned on the approval by the voters, it only applies to repeals taking place after November 3, 2015.[19] Thus, the

---

[18]*See supra* note 16.

[19]The District also argues that the Legislature's failure to make SB-1's repeal prohibition effective immediately, as it did some other provisions of SB-1, also indicates that it intended that prohibition to only affect repeals occurring after

District argues, the Legislature left a window for school districts to repeal their LOHE until November 3, 2015.

The District's interpretation ignores the plain language of those provisions of SB-1 and SJR-1 regarding when the constitutional and statutory amendments therein take effect. Although it concedes that the increase in the State Homestead Exemption took effect on January 1, 2015, it ignores the language in the temporary provision of SJR-1 that specifically provides that both SB-1's increase in the State Homestead Exemption and SB-1's repeal prohibition took "effect for the tax year beginning January 1, 2015." It also ignores language from SB-1 providing that those sections took effect on the same date as the constitutional amendments. Finally, the District's interpretation would deny its taxpayers all or part of the benefit of the increased State Homestead Exemption, thus defeating one of the primary purposes of the constitutional amendments and SB-1. We should not interpret a statute in such a way that its primary purpose is defeated. *See State v. Hodges*, 92 S.W.3d 489, 495 (Tex. 2002) (rejecting a statutory interpretation that is antithetical to the statute's purpose); *Quick*, 7 S.W.3d at 131–32 (rejecting a statutory interpretation that would cause the statute to partially fail its intended purpose).

---

the approval of the constitutional amendments. We believe there is another reasonable explanation for the Legislature's action. As we have pointed out, the purpose of SB-1's repeal prohibition was to provide a mechanism whereby all Texas taxpayers would receive the full benefit of the proposed increase in the State Homestead Exemption. If the voters failed to approve this increase, then that prohibition would not be necessary. However, if the proposed increase was approved by the voters, SB-1's repeal prohibition would become fully operational, including its effective date, in order to achieve its purpose.

27

### b.      Summary

Based on the plain language of the statute, we find that SB-1's repeal prohibition took effect on the same date as the increase in the State Homestead Exemption, that is, January 1, 2015. Further, this interpretation promotes the purposes of the constitutional amendments and SB-1 that all Texas taxpayers would fully benefit from the increase in the State Homestead Exemption. Consequently, we agree with the trial court's determinations that SB-1's repeal prohibition prohibits school districts that had adopted a LOHE for the 2014 tax year from repealing or reducing the amount of the LOHE at any time between January 1, 2015, through December 31, 2019, and that SB-1's repeal prohibition is constitutional, as requested by the State in its joint motion for summary judgment.

### c.      The Trial Court's Grant of Declaratory Relief not Requested Was Harmless Error

However, the trial court also determined that "the repeal and any reduction by [the District] of the [LOHE] that it adopted for the 2014 tax year violates [SB-1's repeal prohibition] and, therefore, has no effect and is void as a matter of law." This declaratory relief was not requested in the State's joint motion for summary judgment.

"Summary judgments . . . may only be granted upon grounds expressly asserted in the summary judgment motion." *G & H Towing Co. v. Magee*, 347 S.W.3d 293, 297 (Tex. 2011) (per curiam) (citing TEX. R. CIV. P. 166a(c); *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993)). As a general rule, "[g]ranting a summary judgment on a claim not addressed in the summary judgment motion . . . is . . . reversible error." *Id.* (citing *Chessher v. Sw. Bell Tel. Co.*, 658 S.W.2d 563, 564 (Tex. 1983) (per curiam)). However, in those instances in

28

which either (1) the omitted claim is precluded as a matter of law by other grounds raised in the motion or (2) the omitted claim is derivative of the addressed claim and the movant showed itself entitled to summary judgment on the addressed claim, the error of the trial court is harmless. *See id.* at 297–98; *Wilson v. Davis*, 305 S.W.3d 57, 73 (Tex. App.—Houston [1st Dist.] 2009, no pet.). We have recognized that a summary judgment on an omitted claim should be affirmed when reversal "would be meaningless because the omitted cause of action is precluded as a matter of law." *Taylor v. Medtox Diagnostics, Inc.*, No. 06-17-00032-CV, 2017 WL 4818623, at *2 (Tex. App.—Texarkana Oct. 26, 2017, pet. filed) (mem. op.) (quoting *Withrow v. State Farm Lloyds*, 990 S.W.2d 432, 438 (Tex. App.—Texarkana 1999, pet. denied)).

In this case, the State showed that it was entitled to judgment as a matter of law that SB-1 prohibits school districts that had adopted a LOHE for the 2014 tax year from repealing or reducing the amount of the LOHE at any time between January 1, 2015, through December 31, 2019. School districts derive their authority to act from the Legislature. *McIntyre v. El Paso Indep. Sch. Dist.*, 499 S.W.3d 820, 839 (Tex. 2016) (Green, J., dissenting). When SB-1 became fully operational, the District had no authority to repeal the LOHE between January 1, 2015, and December 31, 2019. Therefore, its repeal of the LOHE on June 29, 2015, was of no effect.

Consequently, we find that even though the trial court's declaration that the repeal by the District of the LOHE that it adopted for the 2014 tax year violates SB-1's repeal prohibition and that it has no effect and is void as a matter of law was error, such error was harmless.[20]

---

[20]As we have previously held, the trial court erred in granting the injunctive relief to the Axbergs since there was no evidence that the District had assessed and collected taxes subject to its LOHE, so they failed to establish that they were entitled to this relief. To the extent that this injunctive relief was also granted to the State, the trial court erred for the same reason.

## V.     Conclusion

For the reasons stated, we affirm the trial court's final judgment for the State insofar as it declared (1) that Section 11.13(n-1) of the Texas Tax Code [SB-1's repeal prohibition] (a) is constitutional, and (b) prohibits school districts from repealing or reducing the amount of a local option homestead exemption that was adopted for the 2014 tax year at any time between January 1, 2015, and December 31, 2019, and (2) that the repeal and any reduction by the Kilgore Independent School District of the local option homestead exemption that it adopted for the 2014 tax year violates Section 11.13(n-1) of the Texas Tax Code [SB-1's repeal prohibition] and, therefore, has no effect and is void as a matter of law. In all other respects, we reverse the trial court's judgment. We remand this case to the trial court for further proceedings consistent with this opinion.

Ralph K. Burgess
Justice

Date Submitted:     December 4, 2018
Date Decided:       February 11, 2019