

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| | § | |
| IN THE MATTER OF THE ESTATE OF | § | No. 08-16-00270-CV |
| MARIO ZERBONI, DECEASED. | § | Appeal from |
| | § | Probate Court No. 1 |
| | § | of El Paso County, Texas |
| | § | (TC # 2010-P01056) |
| | § | |

## **O P I N I O N**

After Mario Zerboni passed away, his wife probated his will. One of Zerboni's daughters, Ana Patricia Zerboni Flores ("Flores"), later intervened in the probate proceedings and claimed Zerboni's signature on the will was a forgery. The probate court granted the wife's no evidence motion for summary judgment dismissing that claim. We affirm.

## BACKGROUND

Mario Zerboni passed away on September 19, 2010. His wife, Margaret Patricia Hart (Hart), filed an application to prove a will dated January 10, 2005. The will was witnessed by three persons, and contained a self-proving affidavit as set out in the Estates Code. *See* TEX.EST.CODE ANN. § 251.104 (West Supp. 2017). The probate court admitted the will to probate following a hearing on October 26, 2010.

Almost two years later, Flores filed an application to set aside the order probating the will. Flores alleged that her father's signature on the January 10, 2005 will was a forgery, and that she was a beneficiary under an earlier will. After the parties exchanged discovery, Hart filed a no evidence motion for summary judgment claiming that Flores lacked any evidence of the essential elements of the claims asserted. In particular, the motion claimed that Flores lacked any evidence that the signature on the challenged will was forged.[1]

Flores filed a response.[2] The response included Hart's deposition explaining that she and Mario Zerboni jointly redid their wills using a form found on an internet website. They executed the wills at a Merrill Lynch office where Hart worked. The three witnesses were Merrill Lynch employees, as was the notary public that notarized the signatures. Mario Zerboni had also worked for a time at this same Merrill Lynch office and would have been known to the witnesses and notary.

The response also attached an opinion letter from a handwriting expert, Curtis Baggett. The response included Baggett's curriculum vitae setting out his education and experience as a document examiner. Baggett's report explains in general that:

> An examination of handwriting includes establishing patterns of writing habits to help identify the author. Handwriting is formed by repeated habits of writing by the author, which are created by neuro-pathways established in the brain. These neuro-pathways control muscular and nerve movement for writing, whether the writing is executed by the hand, foot, or mouth.

---

[1] An amended application also asserted claims for fraud, undue influence, and a failure to meet the formalities for wills under the Estates Code. Those issues were all disposed of adversely to Flore on summary judgment, and have been conceded on appeal.

[2] Flores was represented for a time in the probate court, but as of the date of the motion for summary judgment, she appeared pro se. She timely filed an initial response titled "Re: Margaret P. Hart's Motion for Summary Judgment". Two days before the summary judgment hearing, she filed "Plaintiff's Response in Opposition to the Defendant's Motion for Summary Judgment and Brief in Support." Because there is no order allowing the amended response, which was otherwise not timely, we consider only the initial response. *See Benchmark Bank v. Crowder*, 919 S.W.2d 657, 663 (Tex. 1996)(affidavit filed two days before summary judgment hearing was not considered on appeal in absence of order granting leave for late response).

Baggett's report indicates that he compared twenty-nine documents with the known signature of Mario Zerboni to the signature on the January 10, 2005 will. Baggett then concludes with respect to this case that:

> Based upon thorough analysis of these items and from an application of accepted forensic document examination tools, principles and techniques, it is my professional expert opinion that a different person authored the name of Mario Zerboni on the questioned documents. Someone did indeed forge the signatures of Mario Zerboni on [the January 10, 2005 last will and testament]."

Baggett then included quotes and citations to several references standing for the proposition that "one significant difference in the fundamental structure of a writing compared to another is enough to preclude common authorship[.]." Baggett did not explain, however, what "significant difference" he observed between the exemplars and the challenged signature on the will. Rather, he states his willingness to testify in court where he "will prove to the Court that my opinion is correct." The report contains a concluding jurat swearing to the contents of the letter opinion. Flores also attached to the summary judgment response the various exemplar signatures that Baggett identified in his report, as well as a copy of the January 10, 2005 will.

At the hearing, Hart orally objected to the documents attached to the summary judgment response because they were not properly proven up. The trial court did not expressly rule on that objection, but it did generically grant the motion for summary judgment.

### STANDARD OF REVIEW

We review a trial court's decision to grant summary judgment *de novo*. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). A "no evidence" motion requires the moving party to "state the elements as to which there is no evidence," and upon doing so, the burden shifts to the non-movant to produce summary judgment evidence raising a genuine issue of material fact regarding each element challenged in the motion. TEX.R.CIV.P. 166a(i); *see also Wade Oil & Gas, Inc. v. Telesis Operating Company, Inc.*, 417 S.W.3d 531, 540 (Tex.App.--El Paso 2013, no pet.).

3

A defendant is entitled to summary judgment if it conclusively negates at least one element of the plaintiff's claim, or conclusively establishes an affirmative defense. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010).

We review the evidence in the light most favorable to the non-movant, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 208 (Tex. 2002). The non-movant establishes a genuine issue of material fact by producing more than a scintilla of evidence regarding the challenged element. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). More than a scintilla of evidence exists when reasonable and fair-minded individuals could differ in their conclusions. *Id*. The non-movant fails in their burden when the evidence is so weak as to do no more than create a mere surmise or suspicion of material fact. *Wade Oil & Gas*, 417 S.W.3d at 540.

## DISCUSSION

Flores presents one issue on appeal. She contends that Baggett's expert witness report raises a genuine issue of material fact as to whether Mario Zerboni's signature on the January 10, 2005 will was forged. We disagree.

A will proponent carries the initial burden of proof when admitting a will to probate. *See* TEX. EST. CODE ANN. § 256.152 (West Supp.. 2017)(setting out predicates for probating will). A self-proving will obviates some of those burdens, but once admitted to probate, a self-proved will is prima facie evidence of valid will execution. *Id*. at § 251.102 (West 2014); *Schindler v. Schindler*, 119 S.W.3d 923, 931 (Tex.App.--Dallas 2003, pet. denied); *James v. Haupt*, 573 S.W.2d 285, 288 (Tex.Civ.App.--Tyler 1978, writ ref'd, n.r.e.). Accordingly, Flores carried the

4

burden of proof on the issue of forgery on the already probated will. *See Tomlinson v. Estate of Theis*, 03-07-00123-CV, 2008 WL 160202, at *6 (Tex.App.--Austin Jan. 18, 2008, no pet.)(mem. op., not designated for publication)(allocating burden of proof to party claiming forgery of self-proved will). Flores claims she met that burden through her expert's opinion letter which was attached to her summary judgment response. On its face, the expert report states that the signature is a forgery. In response, Hart does not challenge the expert's qualifications, but rather claims that the attachments to the summary judgment response were never proved up as admissible and that the expert's opinion was conclusory.

Hart first contends the exhibits to the summary judgment response were never authenticated. A party cannot simply attach a document to a summary judgment response and assume it to be admissible. *Gunville v. Gonzales*, 508 S.W.3d 547, 558 (Tex.App.--El Paso 2016, no pet.); *United Rentals, Inc. v. Smith*, 445 S.W.3d 808, 814 (Tex.App.--El Paso 2014, no pet.) ("Simply attaching a document to a pleading neither makes the document admissible as evidence, dispenses with proper foundational evidentiary requirements, or relieves a litigant of complying with other admissibility requirements.").

And had Flores simply attached an expert report, the argument might have ended there. Baggett's expert report, however, contains a jurat at its conclusion such that it could be considered as an affidavit. An "affidavit" is "a statement in writing of a fact or facts signed by the party making it, sworn to before an officer authorized to administer oaths, and officially certified to by the officer under his seal of office." TEX.GOV'T CODE Ann. § 312.011(1)(West 2013). An affidavit that meets the Government Code's requirements may be presented as summary judgment evidence if otherwise complies with TEX.R.CIV.P. 166a(f). *Mansions in the Forest, L.P. v. Montgomery County*, 365 S.W.3d 314, 316 (Tex. 2012). Baggett's report is signed by him, and

5

immediately following the signature is a jurat executed by a notary public stating "[t]he above Letter of Opinion was sworn to and subscribed before me by Curt Baggett this 4th day of December, 2012." The jurat includes the notary public's seal. Any complaint about the formalities of the affidavit would constitute an objection to form that must have been raised and ruled on below. *Id*. at 317 (holding that an objection is required to preserve a complaint that a purported affidavit lacks a jurat or other indication that it was sworn to because it is an objection to form); *Bates v. Pecos County*, 546 S.W.3d 277 (Tex.App.--El Paso 2017, no pet.)(stating same for sham affidavit objection); *Trinh v. Campero*, 372 S.W.3d 741, 744 (Tex.App.--El Paso 2012, no pet.)(same for objection to timeliness of designation of expert used to respond to summary judgment).

Yet even assuming Baggett's report should have been treated as an affidavit, we nonetheless agree with Hart that Baggett's core opinion is conclusory. A conclusory statement in an affidavit is a substantive defect that can be raised for the first time on appeal. *Ordonez v. Solorio*, 480 S.W.3d 56, 63-64 (Tex.App.--El Paso 2015, no pet.). As this Court has recognized, "form" is defined as the structure of something, while "substance" is a fundamental or characteristic part or quality. *Dailey v. Albertson's, Inc.*, 83 S.W.3d 222, 226 (Tex.App.--El Paso 2002, no pet.). "For instance, the lack of a formal recitation in an affidavit that the facts set out are within the affiant's personal knowledge is a matter of form, while lack of personal knowledge reflected in the affiant's testimony itself is one of substance." *Ordonez*, 480 S.W.3d at 64.

A statement is conclusory if it provides a conclusion but no underlying facts in support of the conclusion. *See Brown v. Brown*, 145 S.W.3d 745, 751 (Tex.App.--Dallas 2004, pet. denied); *Hou-Tex., Inc. v. Landmark Graphics*, 26 S.W.3d 103, 112 (Tex.App.--Houston [14th Dist.] 2000, no pet.); *Rizkallah v. Conner*, 952 S.W.2d 580, 587 (Tex.App.--Houston [1st Dist.] 1997, no writ).

6

Logical conclusions based on stated underlying facts are proper. *Rizkallah*, 952 S.W.2d at 587; *Thompson v. Curtis*, 127 S.W.3d 446, 450 (Tex.App.--Dallas 2004, no pet.)  Here, however, Baggett states a premise and a conclusion, but because there is nothing connecting the two, the conclusion is little more than his bare opinion.  Baggett first claims that there is a science to document examination, a proposition no one here contests.  He next claims that he compared exemplar signatures to the questioned signature.  He then concludes that the questioned signature is a forgery.  He finally states that a single difference in handwriting proves a forgery, perhaps inferring that such a situation exists here, but he never identifies what difference, if any, he found. He finally suggests that he is willing to testify in court and prove his assertion.  The problem here is that the summary judgment proceeding is where he needed to offer proof of that assertion.

The fact that Baggett may be a qualified expert does not change our opinion.  Courts do not accept the mere *ipse dixit* of an expert (or, it is because I say it is).  *City of San Antonio v. Pollock,* 284 S.W.3d 809, 816 (Tex. 2009)(collecting cases); *Loera v. Fuentes*, 511 S.W.3d 761, 772 (Tex.App.--El Paso 2016, no pet.).  As the Texas Supreme Court has stated: "although expert opinion testimony often provides valuable evidence in a case, 'it is the basis of the witness's opinion, and not the witness's qualifications or his bare opinions alone, that can settle an issue as a matter of law; a claim will not stand or fall on the mere *ipse dixit* of a credentialed witness.'" *Coastal Transport Company, Inc. v. Crown Central Petroleum Corp.*, 136 S.W.3d 227, 232 (Tex. 2004), *quoting Burrow v. Arce*, 997 S.W.2d 229, 235 (Tex. 1999).  A bare conclusory expert opinion would never support a judgment. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 712 (Tex. 1997)("When the expert 'brings to court little more than his credentials and a subjective opinion,' this is not evidence that would support a judgment. . . . If for some reason such testimony were admitted in a trial without objection, would a reviewing court be obliged to accept it as some

7

evidence?  The answer is no.").  Nor would it create a fact issue in response to a motion for summary judgment.  *Wadewitz v. Montgomery*, 951 S.W.2d 464, 466 (Tex. 1997)("[A]n expert witness's conclusory statement . . . will neither establish good faith at the summary judgment stage nor raise a fact issue to defeat summary judgment.").

Our record underscores the rationale for this rule.  Here is the questioned signature found on the January 10, 2005 will:

gnature of Mario Zerboni, as Testator)

One of the exemplar signatures that Baggett used in comparison indeed contains a difference noticeable to a lay observer:

MARIO ZERBONI

Yet other exemplar signatures, such as this one, contain no obvious difference:

LLC

Mario Zerboni, as Managing Member

8

Looking at the twenty-nine exemplars, we note several signatures with differences, but others not. We do not doubt that a proper expert opinion which relies on the comparison of exemplar signatures to a questioned signature can create a fact question for a jury. *See In re Estate of Whipple*, 04-11-00645-CV, 2013 WL 1641414, at \*9 (Tex.App.--San Antonio Apr. 17, 2013, pet. denied). And had Baggett articulated some specific characteristic in the signature that supported his conclusion, we might well view the situation differently. But merely stating that he made a comparison, and that in his opinion one signature is a forgery, is no different than an expert who claims to have reviewed a case file and concludes that one party should win. That kind of expert opinion carries no weight in the summary judgment context.[3]

The exemplars are identified in, and appear to be attached to Baggett's report. Under the summary judgment rules, a party "shall" attach "[s]worn or certified copies of all papers" referred to in an affidavit. TEX.R.CIV.P. 166a(f); s*ee Republic Nat'l Leasing Corp. v. Schindler,* 717 S.W.2d 606, 607 (Tex.1986)(per curiam)(holding that affidavit which stated that attached documents were true and correct copies of the originals was sufficient). We need not reach the question of whether the exemplars were properly included in the summary judgment response. Even if they were, Flores does not suggest that the exemplars in and of themselves create some evidence for the forgery claim. Flores points to no other evidence in the summary judgment response that purports to create a fact issue on forgery. We overrule her single issue on appeal and affirm the probate court's judgment below.

---

[3] Proper lay testimony can also establish a fact issue on forgery. *In re Est. of Swanson*, 130 S.W.3d 144, 148 (Tex.App.--El Paso 2003, no pet.)(one sister's unequivocal testimony that she knew her sister's signature, and that the signature on the will was not her sisters raised a fact issue precluding summary judgment). But even with lay testimony, bare opinions that a signature is a forgery are not sufficient. *See Cotten v. Cotten*, 169 S.W.3d 824, 828 (Tex.App.--Dallas 2005, pet. denied)(trial court properly struck as conclusory a statement in an affidavit that the witness' mother had forged his father's signature); *In re Est. of Price*, 04-05-00438-CV, 2006 WL 3725542, at \*2 (Tex.App.--San Antonio Dec. 20, 2006, pet. denied)(mem. op.)(claim that the signature and initials on a will "look different" than that of the testator did not create a fact issue on a forgery claim).

July 31, 2018

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Palafox, J., and Larsen, J. (Senior Judge)
Larsen, J. (Senior Judge), sitting by assignment