

| | | |
|---|---|---|
| JOSE A. ALICEA, M.D., | § | No. 08-19-00235-CV |
| Appellant, | § | Appeal from the |
| v. | § | 327th District Court |
| CURIE BUILDING, L.L.C., | § | of El Paso County, Texas |
| Appellee. | § | (TC# 2018DCV1765) |
| | § | |

**O P I N I O N**

Appellant Jose A. Alicea appeals the trial court's granting of Appellee Curie Building, L.L.C.'s Motion for Summary Judgment against him.

After withdrawing his ownership rights in several entities that owned commercial properties, Appellant sought to invoke a provision of his agreement with those entities which would entitle him to a share of sale proceeds if all or substantially all of their assets were sold within two years of withdrawing his ownership rights. The entities—which, through a series of conversions and mergers were consolidated into the entity which is now the Appellee in this case—disputed his right to invoke the contract's subsequent-sale provision because they claimed the asset transfer in question occurred pursuant to a corporate reorganization. Appellant filed a declaratory action to determine his rights under their agreement, which the trial court resolved in Appellee's favor after it filed for summary judgment.

We agree with the trial court and affirm its judgment.

**FACTUAL BACKGROUND**

The factual background of this case is recited in detail in Appellee's motion for summary judgment, whose corresponding judgment forms the basis of this appeal. Because Appellant does not controvert the facts presented by Appellee, we take them as true.

**The Original Entities**

The doctors of a local surgical group formed a number of entities whose purpose was to own real estate from which the surgical group would rent to operate their practice locations. Each such entity was originally organized as a limited partnership, and was the subject of a buy-sell agreement, each with identical terms. The most recent version of each buy-sell agreement prior to the transaction underlying this case was signed in 2009 and attached to Appellee's motion for summary judgment (the Buy-Sell Agreement). Appellant was a party to the Buy-Sell Agreement which memorialized his ownership interest in each entity as either a limited partner or member.

In 2013, Appellant executed withdrawal and redemption agreements with each of the various entities in which he held an ownership interest, effectively withdrawing his interest as an owner and/or member of each entity, as applicable.

**The Transaction[1]**

The Transaction occurred in three distinct phases. The first phase occurred on September 29, 2014, when, in preparation for the acquisition of various properties by a real estate investor, each limited partnership was converted into an LLC and the LLC which formerly served as its general partner was merged into it. Specifically as to Appellee, Curie Building, Ltd. was converted into an LLC and its general partner, Curie General, LLC, was merged into Curie Building, LLC. A similar process occurred with the remaining entities. Specifically, East Building,

---

[1] We refer generally to the described series of mergers and acquisitions in this case as "the Transaction."

Ltd. was converted into an LLC and EPOSG - East General, LLC merged into it; and Kenworthy Building, Ltd. was converted into an LLC and Kenworthy General, LLC merged into it.

The second phase involved the contribution of property from the newly formed LLCs to subsidiaries of the real estate investment partnership, Physicians Realty, LP. Each of the new LLC entities entered into a contribution agreement with subsidiaries of Physicians Realty, LP, which contributed the LLCs' property in exchange for ownership units in the real estate investment company, as well as cash.

In the third and final phase of the Transaction, East Building, LLC and Kenworthy Building, LLC merged into Curie Building, LLC. When all was said and done, forty-nine percent of the net equity contribution value of the properties was received by the LLCs' members in the form of ownership shares of the real estate investment partnership; fifty-one percent was received in cash. Accordingly, the members of the LLCs obtained more favorable tax treatment because only the cash portion they received from the transaction was taxed.

**The Buy-Sell Agreement's Subsequent Sale Premium Provision**

At issue in the present case is Section 3(e)(1)[b] of the Buy-Sell Agreement, which entitles Appellant to his share of a portion of the sales proceeds if the companies sell "all or substantially all" of their assets within twenty-four months of their buyout of him. That section goes on to state,

> The provisions of this Section 3(e)(1)[b] shall apply only upon a sale of all, or substantially all of the assets of the Companies as described above; and without limitation upon the foregoing, the provisions of this Section 3(e)(1)[b] shall not apply in the event of transfer of assets by the Companies pursuant to any reorganization of the Companies, or of either of the Companies.

Following the transaction, Appellant sought to invoke the Subsequent Sale Provision of the Buy-Sell Agreement. Appellee resisted, claiming any asset transfer was pursuant to a reorganization.

## PROCEDURAL BACKGROUND

Appellant filed suit against Appellee seeking declaratory judgment regarding his rights under the Buy-Sell Agreement. Specifically, Appellant contends the Transaction triggered the Subsequent Sale Premium provision and he is thus entitled to his share of the property transfer received by the other members. Appellee answered with a general denial, and filed its motion for summary judgment a few months after litigation initiated. In its motion, Appellee asserts the Transaction was a reorganization of the companies, which would therefore, according to Appellee, explicitly preclude triggering the Subsequent Sale Premium provision. In support of its motion, Appellee attached the Buy-Sell Agreement and an affidavit by Steve Lauterbach, an accountant who assisted the various entities involved in the Transaction.

In his response, Appellant objected to Lauterbach's affidavit. Specifically, he complained that Lauterbach's failure to attach documentary evidence of the subject matter upon which Lauterbach testified in the affidavit constituted factual conclusions. He likewise complains the affidavit's contents labeling the Transaction as a reorganization rather than a sale constitutes a legal conclusion without providing facts for its basis. He also complained of Appellee's failure to designate Lauterbach as an expert witness, and for such reason his affidavit should be struck.

Appellant argues that even if Lauterbach's affidavit is considered competent summary judgment, genuine issues of material fact exist regarding whether a reorganization or sale took place based on Lauterbach's testimony.

Following a hearing, the trial court granted Appellee's motion for summary judgment. After entering the order, the trial court sent a letter to counsel regarding its decision not to award attorney's fees. In the letter, the trial judge referenced the complexity of the transaction and Appellee's counsel's use of diagrams at the summary judgment hearing to aid in the trial court's

4

understanding of the various entities and their relationships. She made the reference to justify the trial court's decision not to award attorney's fees due to the complexity of the transaction and each side's right to counsel to navigate it in the declaratory judgment action.

Final judgment was rendered in the case a short time after the trial court sent its correspondence to the parties. Appellant timely filed his notice of appeal.

## DISCUSSION

Appellant raises three issues on appeal: (1) Whether the trial court erred in overruling his objections to Lauterbach's affidavit as summary judgment evidence; (2) whether the trial court erred in relying on evidence not properly referenced in or incorporated into Appellee's motion for summary judgment; and (3) whether genuine issues of material fact exist regarding whether the Transaction was a sale or a reorganization which would preclude the trial court from granting summary judgment in Appellee's favor.

### ISSUE ONE: Whether the Trial Court Erred in Overruling Appellant's Objections to the Affidavit of Steve Lauterbach.

In his first issue, Appellant contends the trial court erred in overruling Appellant's objections to the affidavit of Steve Lauterbach, CPA. Specifically, Appellant complains the affidavit contains a number of factual and legal conclusions, the evidence it refers to is not on file with the court or attached to the Defendant's motion for summary judgment, and Lauterbach was never designated an expert witness.

### *Standard of Review*

A trial court's decision to admit or exclude evidence for summary judgment is reviewed for abuse of discretion. *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 85 (Tex. 2018); *Hall v. Domino's Pizza, Inc.*, 410 S.W.3d 925, 929 (Tex.App.—El Paso 2013, pet. denied). The test for abuse of discretion is "whether the court acted without reference to any guiding rules or principles." *In Re*

*National Lloyds Ins. Co.,* 507 S.W.3d 219, 226 (Tex. 2016). The complaining party must show, "(1) the trial court erred in admitting the evidence; (2) the erroneously admitted evidence was controlling on a material issue dispositive of the case and was not cumulative; and (3) the error probably caused rendition of an improper judgment in the case." *Hall*, 410 S.W.3d at 929.

### *Applicable Law*

An affidavit that makes factual conclusions or conclusory statements without providing supporting facts is not sufficient evidence to warrant summary judgment. *See Elizondo v. Krist*, 415 S.W.3d 259, 264 (Tex. 2013); *Gunville v. Gonzales*, 508 S.W.3d 547, 560 (Tex.App.—El Paso 2016, no pet.). When used as summary judgment evidence, "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." TEX.R.CIV.P. 166a(f). An affidavit must contain detailed accounts of the facts or provide supporting documents in order to be sufficient summary judgment evidence. *see Berry Contracting, L.P., v. Mann*, 549 S.W.3d 314, 327 (Tex.App.—Corpus Christi 2018, pet. denied). When it is a close call on whether an affidavit contains factual conclusions, the court should hold in favor of the trial court's ruling. *See Larson v. Downing*, 197 S.W.3d 303, 304 (Tex. 2006).

Likewise, an affidavit may not be used as summary judgment evidence when it consists only of legal conclusions. *See Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984). Affidavits require more than legal conclusions or a witness's opinions to settle an issue of law because a claim will not stand or fall on the *ipse dixit* of a credentialed witness. *See Burrow v. Arce*, 997 S.W.2d 229, 235 (Tex. 1999). Summary judgment will also not be supported by conclusory statements from expert opinions. TEX.R.EVID. 602; *see Matter of Estate of Zerboni*, 556 S.W.3d 482, 488 (Tex.App.—El Paso 2018, no pet.).

Typically, in order to be used for summary judgment, evidence not already on file with the clerk must be filed with the moving party's motion for summary judgment. TEX.R.CIV.P. 166a(d). A witness may testify to a matter when evidence is introduced that demonstrates the witness has personal knowledge of the matter. TEX.R.EVID. 602. The existence of the witness's personal knowledge may be proven by the witness's own testimony, unless that witness is testifying as an expert on behalf of a party. *Id.*

Finally, a trial court may not rely on the testimony of an expert witness if the expert was not timely designated, unless the party offering the testimony can show good cause or lack of unfair surprise. *Fort Brown Villas III Condo. Ass'n, Inc. v. Gillenwater*, 285 S.W.3d 879, 881 (Tex. 2009); *Total Clean, LLC v. Cox Smith Matthews Inc.*, 330 S.W.3d 657, 663-64 (Tex.App.—San Antonio 2010, pet. denied).

*Analysis*

Here, Lauterbach's affidavit states he was competent to testify on the facts of this case due to his personal knowledge of, and professional involvement in, the business transaction. Lauterbach worked as the accountant, tax accountant, and business advisor to a number of the entities involved in the transaction, including Appellee. He was personally involved in the preparation of the Buy-Sell Agreement and the Withdrawal and Redemption Agreements executed by Appellant prior to the Transaction. In addition, he participated in the transactions he identified and testified to. These facts, set forth in the beginning of Lauterbach's affidavit, indicate Lauterbach testified based on personal knowledge gleaned from his own work experience as a participant in the Transaction itself and in compliance with Rule 602 of the Texas Rules of Evidence. *See* TEX.R.EVID. 602. Moreover, Lauterbach provided an extensive discussion of facts

explaining the steps of the Transaction which were, according to his affidavit, derived from his personal involvement in its process.

Appellant argues that Lauterbach's description of the transaction consists of factual conclusions without documentary evidence to support them. However, as Appellee posits, ample basis exists in Lauterbach's affidavit to show this description was based on Lauterbach's recollection of the Transaction as it took place, considering his extensive involvement in the process, rather than solely from his review of documents whose contents support his testimony. Thus, although various documents might further bolster his testimony regarding how the Transaction transpired, we do not believe they are mandatory to prove the Transaction took place as he stated. His testimony describes, generally, the series of conversions, mergers, acquisitions and transfers which occurred as part of the Transaction based upon his personal recollection as a participant in the process and preparer of the documents in question. Nothing before us questions the veracity of his description of these events, or offers an alternative narrative for the Transaction's timeline. We are unpersuaded by Appellant's argument calling Lauterbach's testimony of the Transaction conclusory on this basis.

Additionally, the Contribution Agreement--which Appellant asserts should have been included as summary judgment evidence since it serves as the basis for Lauterbach's testimony regarding the steps of the Transaction--was an exhibit to Lauterbach's deposition, which Appellant admitted as evidence in opposition to Appellee's motion. Thus, although Appellant urges there is no documentary evidence showing what transpired in the Transaction and appears to question whether the merges "actually occurred," Appellant had the very document in his possession which describes how the Transaction played out, which he references repeatedly during his questioning

of Lauterbach in the deposition. It is, therefore, apparent to us that Lauterbach's affidavit and his deposition testimony were not conclusory in their discussion of the Transaction's events.

Appellant further complains that Lauterbach's characterization of the Transaction as a reorganization, rather than a sale, is conclusory and not based in fact. Lauterbach defined "reorganization" as "a change in legal structure or a restructuring of a company." Appellant argues that because the term "reorganization" is not defined in the Buy-Sell Agreement, Lauterbach's assigning of a definition to that term is conclusory. However, as he clarified in his deposition, he used the term "reorganization" based upon his involvement in the process and observation of how the subject entities' legal structures were changed and merged with one another, and their assets acquired or transferred. Additionally, because the Buy-Sell Agreement does not define "reorganization," we must consider its "plain, ordinary, and generally accepted meaning." *El Paso Field Services, LP v. Mas Tec North America, Inc.*, 389 S.W.3d 802, 808 (Tex. 2012). Appellee provides two definitions of "reorganization" in its brief from two dictionaries, one being "to organize differently" and the other as "organize again or anew, i.e. to effect a reorganization." Merriam-Webster defines "reorganization" as "the act or process of reorganizing; the state of being reorganized." *Reorganization Definition*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/reorganization (last visited Feb. 16, 2021). Cambridge Dictionary defines it as, "the act of organizing something again in order to improve it." *Reorganization definition,* DICTIONARY.CAMBRIDGE.ORG, https://dictionary.cambridge.org/us/dictionary/english/reorganization (last visited Feb. 16, 2021). Lauterbach's definition of "reorganization" as it pertains to a company being, "a change in the legal structure or a restructuring of a company" is close in meaning to the foregoing ordinary meanings defined by the various references cited by Appellee and this Court. We therefore find

his assigned definition of "reorganization" not to be factually or legally conclusory, or the witness's *ipse dixit,* but rather used according to its plain, ordinary, and generally accepted meaning.

Finally, Appellant asserts the trial court erred in admitting the Lauterbach affidavit as summary judgment evidence because Appellee failed to designate Lauterbach as an expert witness. Appellee argues Lauterbach was never designated an expert witness because he testified as a fact witness. As previously addressed, Lauterbach testified based on personal knowledge from working as the accountant, tax accountant, and business advisor to the entities involved in the Transaction, and based on his participation in preparing the operative documents in this case, which comply with Rule 602 of the Texas Rules of Evidence. *See* TEX.R.EVID. 602. We therefore find no requirement for his designation as an expert witness in order for the trial court to have considered his affidavit as summary judgment evidence.

We find Lauterbach's affidavit to be in compliance with Rule 166a(f) and the trial court did not abuse its discretion in admitting it as summary judgment evidence. We overrule Appellant's first issue.

**ISSUE TWO: The Trial Court Erred in Relying On Evidence That Was Not Properly Referenced in or Incorporated into Curie's Motion for Summary Judgment and Granting Curie's Motion for Summary Judgment.**

On the second point of error, Appellant contends the trial court erred for considering diagrams referenced at the summary judgment hearing but not admitted as summary judgment evidence in its rendition of judgment in Appellee's favor. Appellant argues the trial court's allegedly-improper consideration of material other than the summary judgment evidence warrants reversal of the trial court's judgment. We must therefore determine whether Appellant has

10

sufficiently demonstrated the trial court considered evidence outside of the record in making its decision, and, if so, whether harm resulted therefrom.

### *Applicable Law*

In deciding whether to grant summary judgment, a trial court may only consider summary judgment evidence which is "on file" with the trial court. *See* TEX.R.CIV.P. 166a(d); *see also Enterprise Leasing Co. of Houston v. Barrios*, 156 S.W.3d 547, 549 (Tex. 2004). Where evidence is not timely filed prior to the summary judgment hearing, it may only be late-filed with leave of court. *See* TEX.R.CIV.P. 166a(c); *see also Benchmark Bank v. Crowder*, 919 S.W.2d 657, 663 (Tex. 1996). Where a trial court grants such leave, there must be an affirmative indication in the record that the late-filed evidence was accepted or considered. *See Kilgore Indep. School Dist. v. Axberg*, 572 S.W.3d 244, 255-56 (Tex.App.—Texarkana 2019, pet. denied). If the record does not so indicate, this Court presumes the trial court did not consider the evidence. *Id.,* (quoting *SP Terrace, L.P. v. Meritage Homes of Tex.,* LLC, 334 S.W.3d 275, 281-82 (Tex.App.—Houston [1st Dist.] 2010, no pet.); *Crowder*, 919 S.W.2d at 663, (citing *INA of Texas v. Bryant*, 686 S.W.2d 614, 615 (Tex. 1985)). Likewise, the reviewing appellate court may only consider the record as it appeared when summary judgment was rendered. *McGee v. Deere & Co.*, No. 03-04-00222-CV, 2005 WL 670505, at *1 (Tex.App.—Austin Mar. 24, 2005, pet. denied)(mem. op.).

### *Analysis*

Appellant claims Appellee's failure to attach the diagrams to the motion precluded the trial court from relying on the visual aid to identify the multiple entities involved in the disputed reorganization. Appellee counters that Appellant offers no evidence, such as the transcript of the summary judgment hearing, to show the trial court granted summary judgment based on the contents of the diagrams.

When a trial court expressly states the grounds for its decision, this recitation suffices to show what the trial court relied upon. *Metze v. Entman*, 584 S.W.2d 512, 514-15 (Tex.Civ.App.—Houston [14th Dist.] 1979, no writ). In *Metze,* the defendant untimely filed an affidavit to support a material issue of fact to preclude summary judgment without obtaining leave of court. *Id*. at 514. Neither the plaintiff nor the court responded to the defendant's delay in filing. *Id*. Because of the plaintiff's inaction and the court's nonresponse before judgment, the defendant presumed his affidavit was considered summary judgment evidence. *Id.* However, the Houston Court of Appeals held the trial court did not consider the defendant's affidavit as summary judgment evidence. *Id*. It reasoned the trial court's failure to include the affidavit among the evidence listed as considered in the judgment indicated the court did not consider it in rendering its decision. *Id*. at 515.

Here, Appellant created a visual aid to help identify the disputed entities to the trial court, which was not attached to its motion or filed as summary judgment evidence. In rendering its judgment, the trial court listed what it considered in arriving at its decision, which did not include Appellee's diagrams. The summary judgment order states:

> After having considered Defendant's Motion for Summary [Judgment], Plaintiff's Response and Objections to Defendant's Motion for Summary Judgment and having considered the arguments of counsel in open court, is of the opinion that the following order should be entered; it is therefore,
> ORDERED, ADJUDGED and DECREED that Plaintiff's objections to Defendant's Motion for Summary Judgment be and the same are hereby DENIED. Defendant's Motion for Summary Judgment is hereby GRANTED.

Appellant's contrary argument relies on mention of the diagrams in a letter from the trial court in the month following the hearing, addressing Appellee's request for attorney's fees. In the trial court's letter, the diagrams were mentioned as useful to "help navigate the entities and their relationships." Nothing in the letter indicates the trial court's judgment was based upon evidence presented in the diagrams. More importantly, the order granting summary judgment omits any

mention of the visual aids as being a basis for its ruling. We therefore find there is no evidence indicating the trial court improperly considered the diagrams prepared by Appellee's counsel as evidence in rendering summary judgment.

Appellant's second issue is overruled.

### ISSUE THREE: Whether the Trial Court Erred in Granting Appellee's Motion for Summary Judgment Because there Were Genuine Issues of Material Fact in Dispute.

Appellant claims genuine issues of material fact exist in this case and the trial court erred in granting Defendant's motion for summary judgment. Specifically, Appellant suggests a reasonably prudent person could determine a sale occurred between Appellant and Appellee rather than a corporate reorganization.

### *Standard of Review*

A defendant moving for summary judgment "bears the burden of proving there is no genuine issue of material fact as to at least one essential element of the cause of action, and that it is entitled to judgment as a matter of law." *Cimarex Energy Co. v. Anadarko Petroleum Corp.*, 574 S.W.3d 73, 86 (Tex.App.—El Paso 2019, pet. denied)(citing *Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017)). If the movant meets its burden, the burden shifts to the nonmoving party to raise an issue of fact regarding an element of the action. *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 511(Tex. 2014). If the initial burden is not met, the nonmoving party need not present any evidence to the contrary. *El Pescador Church, Inc. v. Ferrero*, 594 S.W.3d 645, 665 (Tex.App.—El Paso 2019, no pet.)(citing *Amedisys, Inc.*, 437 S.W.3d at 511).

Courts of appeals review the granting of summary judgment *de novo*. *Kachina Pipeline Co., Inc. v. Lillis¸* 471 S.W.3d 445, 449 (Tex. 2015). The evidence is reviewed "in the light most favorable to the nonmovant, crediting favorable evidence if reasonable jurors could do so, and

disregarding contrary evidence unless reasonable jurors could not." *1320/1390 Don Haskins, Ltd. v. Xerox Commer. Sols., LLC*, 584 S.W.3d 53, 62 (Tex.App.—El Paso 2018, pet. denied).

Here, Appellee moved for summary judgment on the basis that there was no genuine issue of fact regarding the Buy-Sell Agreement's plain language. Thus, according to Appellee, because a reorganization of the entities took place, Appellant was not entitled to proceeds from the sale of property in connection with the reorganization. Appellant disputes the Appellee's definition of "reorganization" offered by Lauterbach, and claims genuine issues of material fact exist regarding whether the transaction was a sale rather than a reorganization, potentially implicating the Subsequent Sale Provision of the Buy-Sell Agreement. Accordingly, the trial court at the summary judgment stage, and now this Court, must undertake a two-part inquiry: (1) do genuine issues of material fact exist regarding the meaning of "reorganization" as used in the Agreement, and, if not, (2) do genuine issues of material fact exist regarding whether a reorganization, as defined by the Agreement, actually occurred?

### *Applicable Law*

"In contract construction cases, we are tasked with finding the meaning of a provision to which the parties have agreed." *Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 479 (Tex. 2019). The parties in the current case differ on what was intended by the word "reorganization" in the Buy-Sell Agreement. Appellee, through Lauterbach's deposition testimony, provide one definition for "reorganization." Appellant disputes Lauterbach's definition because Lauterbach was unable to cite a resource confirming his definition. Therefore, this Court must determine "reorganization's" meaning before ruling as a matter of law. *See id.,* (a reviewing court is required to determine a contract provision's meaning before determining if a party could prevail as a matter of law).

In evaluating a contract, this Court "must ascertain the true intentions of the parties as expressed in the writing itself." *Kachina Pipeline*, 471 S.W.3d at 450, (quoting *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011)). "This analysis begins with the contract's express language." *Murphy Expl. & Prod. Company-USA v. Adams*, 560 S.W.3d 105, 108 (Tex. 2018). A contract's language is given its "plain, ordinary, and generally accepted meaning unless the instrument directs otherwise." *URI, Inc. v. Kleberg Cty.*, 543 S.W.3d 755, 764 (Tex. 2018)[Internal quotations omitted]. Where no definition exists within a contract for a given term, we must give the term its "ordinary and generally accepted meaning[.]" *Great Am. Ins. Co. v. Primo*, 512 S.W.3d 890, 893 (Tex. 2017). If the Court determines that the language "can be given a certain or definite legal meaning or interpretation, then the contract is not ambiguous and we will construe it as a matter of law." *Barrow-Shaver*, 590 S.W.3d at 479. However, if the provision contains more than one reasonable interpretation, it is ambiguous and creates an issue of fact. *Id.* A contract is not ambiguous simply because the parties differ on a term's meaning; the competing definitions must be reasonable for an ambiguity to exist. *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996).

*Analysis*

**Meaning of "Reorganization"**

The provision of the Buy-Sell Agreement at issue is Section 3(e)(1)[b], which reads in pertinent part:

> The provisions of this Section 3(e)(1)[b] shall apply only upon a sale of all, or substantially all of the assets of the Companies as described above; and without limitation upon the foregoing, the provisions of this Section 3(e)(1)[b] shall not apply in the event of transfer of assets by the Companies pursuant to any reorganization of the Companies, or of either of the Companies.

Corporate reorganization, outside of bankruptcy, is not strictly defined under Texas Law. *See* TEX.BUS.ORGS.CODE ANN. § 402.010 (stating that a reorganization is governed by Business

15

Organizations Code Chapter 10); *See* TEX.BUS.ORGS.CODE ANN. § 10.301-306 (discussing reorganization under bankruptcy). Chapter 10 of the Business and Organizations Code, according to its title, covers "Mergers, Interest Exchanges, Conversions, and Sales of Assets[.]" *See, generally, id.,* at §§ 10.001-10.902. However, Chapter 10 does not discuss "reorganization" using that term in any subchapter outside of its discussion of reorganization through bankruptcy. *See id.*

As previously discussed, Appellee offered two plain-meaning definitions of "reorganization," including "to organize differently[,]" and to "organize again or anew, i.e. to effect a reorganization." *See* DK ILLUSTRATED OXFORD DICTIONARY 694 (1998 Oxford University Press, Inc.); WEBSTER'S NEW TWENTIETH CENTURY DICTIONARY 1532 (Second Ed. 1979 Simon & Schuster). Merriam-Webster defines "reorganization" as "the act or process of reorganizing; the state of being reorganized." *Reorganization Definition*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/reorganization (last visited Feb. 16, 2021). Cambridge Dictionary defines it as, "the act of organizing something again in order to improve it." *Reorganization definition,* DICTIONARY.CAMBRIDGE.ORG, https://dictionary.cambridge.org/us/dictionary/english/reorganization (last visited Feb. 16 , 2021).

Black's Law Dictionary offers the following definition of "reorganization:" "[a] restructuring of a corporation, as by a merger or recapitalization, in order to improve its tax treatment under the Internal Revenue Code." *Reorganization*, BLACK'S LAW DICTIONARY (11th ed. 2019). For further context, the United States Code provides seven definitions for a reorganization under the Internal Revenue Code. 26 U.S.C.A. § 368(a)(1)(A)-(G). Two of the definitions included there are:

(A) a statutory merger or consolidation;

.      .      .

16

(D) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor, or one or more of its shareholders (including persons who were shareholders immediately before the transfer), or any combination thereof, is in control of the corporation to which the assets are transferred[.]

*Id.*, at § 368(a)(1)(A), (D).

In this case, no alternative definition of "reorganization" has been offered by Appellant, nor has he made any direct contention that the term, as used in the contract, is ambiguous. Rather, he insists only that a material issue of fact exists with regard to whether the Transaction was a reorganization or a sale. We therefore find Appellee satisfied its burden to prove there were no material issues of fact regarding the meaning of "reorganization" as used in the contract, and, because the term is undefined in the Buy-Sell Agreement, it is appropriate for its plain, ordinary and usual meaning to be applied. *See URI, Inc.*, 543 S.W.3d at 764. With that in mind, we move on to the second prong of our inquiry.

**Transaction as Reorganization or Sale**

Appellant contends a reasonable jury could determine that, under the circumstances of this case, a sale occurred rather than a reorganization. In support of his argument, Appellant cites to Lauterbach's deposition testimony that the cash-transfer portion of the Transaction was treated as a sale for tax purposes. Appellee suggests the Transaction meets the plain and ordinary meaning of "reorganization" because the entities subject to the Buy-Sell Agreement were organized into different entities prior to the transfer of assets occurring.

As Lauterbach testifies in his affidavit, the first phase of the Transaction required the following steps to occur:

1. Curie Building, Ltd. converted to Curie Building, LLC;

2. Curie General, LLC merged into Curie Building, LLC;

3. East-Building, Ltd. converted to East-Building, LLC;

4. EPOSG-East General, LLC merged into East-Building, LLC;

5. Kenworthy Building, Ltd. converted to Kenworthy Building, LLC; and

6. Kenworthy General, LLC merged into Kenworthy Building, LLC.

In the second phase of the Transaction, Curie Building, LLC, East-Building, LLC, and Kenworthy Building, LLC entered into a Contribution Agreement with subsidiaries of Physicians Realty, LP. The LLCs contributed their commercial real estate to Physician's Realty, LP in exchange for Physicians Realty, LP giving the LLCs forty-nine percent of the properties' values in ownership units of the partnership, and the remaining fifty-one percent in cash as consideration. Then, in the final phase, the LLCs merged into Curie Building, LLC, Appellee in this case.

In applying the plain, ordinary usage of the term "reorganization" to the instant case—that is, a change in organization, a change in legal structure for tax purposes, or to organize again—we find there is no reasonable alternative but to determine a reorganization took place in the Transaction during the first phase, and again in the third phase. It is undisputed the first phase involved various entities which were converted into another type of entity, and/or merged with one another. Then, in the third phase, Kenworthy Building, LLC and East Building, LLC merged into Curie Building, LLC, leaving it as the sole remaining entity at the Transaction's conclusion. This type of action meets the plain meaning definition of reorganization as we determined here.

We recognize Appellant's position that the contribution of properties in exchange for ownership units and cash appears to be a sale. The second phase, standing alone, might have been enough to create a fact issue regarding whether a sale took place. However, the fact that a portion of the Transaction was treated as a sale for tax purposes does not create a fact issue regarding whether a reorganization took place. Indeed, we do not believe the plain language of the contract makes the two scenarios mutually exclusive. Section 3(e)(1)[b] states that the Subsequent Sale

Premium provision "shall not apply in the event of transfer of assets by the Companies pursuant to ***any reorganization*** of the Companies, or of either of the Companies." [Emphasis added]. We find inclusion of the term "any" to perhaps be more dispositive of this issue than the precise definition of reorganization. The plain language of the Buy-Sell Agreement indicates a transfer of assets pursuant to *any* reorganization precludes triggering the Subsequent Sale Premium provision. Thus, even if all or substantially all of the entities' assets were sold, as Appellant questions may have occurred, the fact remains that the transfer occurred in the second phase, after the entities had already been reorganized. The entities were then reorganized a second time during the final phase of the Transaction. These reorganizations, and the first, in particular, preclude application of the Subsequent Sale Premium provision.

We find there are no genuine issues of material fact regarding whether the Transaction included a "reorganization" such that Appellant is precluded from invoking the Subsequent Sale Premium provision. Appellant's third issue is overruled.

## CONCLUSION

Having overruled each of Appellant's three issues on appeal, we affirm the judgment of the trial court.

February 17, 2021

YVONNE T. RODRIGUEZ, Chief Justice

Before Rodriguez, C.J., Alley, J., and Ferguson, Judge
Ferguson, Judge (Sitting by Assignment)